FRANK S. PARR v. A. O. HAMNES AND ANOTHER.

228 N. W. 2d 234.

March 21, 1975—Nos. 44843, 44869.

334

*Brink, Sobolik & Severson, Dennis M. Sobolik, Robert K. Severson,* and *O. C. Adamson II,* for appellant.

*Padden, Dickel, Johannson & Wall* and *Kenneth F. Johannson,* for respondents.

Heard before Sheran, C. J., and Otis and MacLaughlin, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

The principal issue in this case is whether the trial court erred in submitting to the jury the question of plaintiff's assumption of the risk. Because we conclude that it did, we reverse and order that judgment be entered for plaintiff.

Defendant Hamnes Farms, Inc., is a Minnesota corporation and defendant A. O. Hamnes is its president. At the time of the accident, plaintiff, a 67-year-old retired farmer, was employed on a part-time basis by the Agricultural Stabilization and Conservation Service (ASCS) of the United States Department of Agriculture.

Defendant corporation had applied to ASCS for a govern-

ment loan for which certain grain stored on the farm was to be collateral. Upon receiving such an application, an ASCS employee is required to measure the amount of grain involved. On August 25, 1971, plaintiff drove to defendant corporation's farm to measure the grain which was stored on the farm in a quonset hut.

The quonset hut in which the grain was stored is 40 feet wide and has an opening in front which is 13 feet high and 18 feet wide, covered by two sliding doors. On the ground in front of the opening to the quonset hut is a concrete slab or apron which is the same width as the opening and 8 feet deep. Immediately inside the sliding doors is a wooden bulkhead or wall which is designed to keep the grain inside the quonset hut whether the doors are open or closed. The bulkhead is 10 feet high and extends across the entire front opening. At the time of the accident the doors were open, revealing the bulkhead and an open space between the top of the bulkhead and the top of the opening. In the process of measuring the grain, plaintiff had to look over the top of the bulkhead into the quonset hut, and for that purpose it was necessary to use a ladder.

When plaintiff arrived at the farm on the date of the accident, defendant A. O. Hamnes (hereafter Hamnes) obtained a ladder for plaintiff's use from a steel storage bin located on the farm. The ladder was designed to be hung from the top of a round, steel storage bin. For this purpose the ladder, which was 15 feet in length, had large, curved, hook-like projections on the top, and since it was designed to hang from bins, the bottom of the ladder was not provided with nonskid feet. Hamnes had used the same ladder for the purpose of looking into the quonset hut in the past.

Hamnes himself placed the ladder for plaintiff's use. He positioned the ladder so that its feet were on the concrete slab while the hooks at the top of the ladder were above the highest point of the bulkhead and, therefore, were not fastened over the top of the bulkhead. While Hamnes was watching, and before ascend-

ing the ladder, plaintiff repositioned it by pulling the feet of the ladder away from the building so that it no longer rested on the concrete slab. Plaintiff then pushed the feet into the ground to secure them and placed the hooks so that they were fastened over the top of the bulkhead. Plaintiff then ascended the ladder so that he could look over the bulkhead into the quonset hut.

After a moment, plaintiff descended the ladder to return to his pickup truck to obtain a clipboard. While plaintiff was momentarily absent, Hamnes, apparently intending to more safely place the ladder, repositioned the ladder by pushing it upward. This had the effect of moving the feet of the ladder back onto the concrete apron and moving the top of the ladder upward so that the hooks were no longer positioned over the upper edge of the bulkhead. Hamnes did not tell plaintiff he had moved the ladder nor did plaintiff observe Hamnes' moving the ladder.

After returning from his truck, plaintiff began climbing up the ladder. He testified that he did not know the ladder had been moved and did not consciously notice that it had been moved. He said that he "didn't pay any attention" and had no reason to believe the ladder had been moved. He testified that if he had known he would not have ascended the ladder.

After going 3 or 4 or 5 feet above the ground on the ladder, plaintiff looked up and for the first time noticed that the ladder was no longer positioned as he had placed it. He then began to climb down the ladder, and as he did so, it fell sideways and plaintiff fell to the ground.

As a result of the fall, plaintiff sustained injuries including a fracture of the hip, a fractured wrist and finger, and a laceration about the left eyebrow. It was stipulated that plaintiff incurred special damages in the form of medical bills in the sum of $10,433.05. He also sustained a 15-percent permanent impairment of the left leg and a 10-percent permanent impairment of the right arm.

The trial court submitted special verdicts to the jury in which they found both defendants and plaintiff negligent, and that the

negligence of each was a direct cause of the accident. The jury attributed 70 percent of the negligence to defendants and 30 percent of the negligence to plaintiff. They found that plaintiff had sustained damages in the sum of $50,000, but also found that he had assumed the risk of his injuries. Plaintiff appeals to this court from the order denying his motion to amend the special verdict or for a new trial and from the judgment for defendants. Defendants filed a notice of review raising issues concerning plaintiff's negligence and the amount of damages.

■ Plaintiff's sole issue on appeal is his contention that the issue of assumption of risk was incorrectly submitted to the jury under the facts of this case.

We held in Springrose v. Willmore, 292 Minn. 23, 192 N. W. 2d 826 (1971), that secondary assumption of risk,[1] which is the type involved in this case, was to be considered as a phase of contributory negligence to be submitted with and apportioned under the comparative negligence statute. However, inasmuch as this case arose prior to Springrose, assumption of risk, if present, is a complete bar to plaintiff's claim for damages.

The doctrine of assumption of risk applies to one who voluntarily exposes himself to a known and appreciated risk arising from another's negligence. Schroeder v. Jesco, Inc. 296 Minn. 447, 209 N. W. 2d 414 (1973). It is clear from our opinions that the risk must be known to the plaintiff and that he does not assume a risk of which he has no knowledge. This doctrine, par-

---

[1] In Springrose v. Willmore, 292 Minn. 23, 24, 192 N. W. 2d 826, 827 (1971), we said: "Assumption of risk has been conceptually distinguished according to its primary or secondary character. Primary assumption of risk, express or implied, relates to the initial issue of whether a defendant was negligent at all—that is whether the defendant had any duty to protect the plaintiff from a risk of harm. It is not, therefore, an affirmative defense. The limited duties owed licensees upon another's property, e.g., Sandstrom v. AAD Temple Bldg. Assn. Inc. 267 Minn. 407, 127 N. W. 2d 173 (1964), or patrons of inherently dangerous sporting events, e.g., Aldes v. St. Paul Ball Club, 251 Minn. 440, 88 N. W. 2d 94 (1958), are illustrative."

ticularly as it applies to the facts of this case, was well stated in Coenen v. Buckman Bldg. Corp. 278 Minn. 193, 204, 153 N. W. 2d 329, 337 (1967):

"In order to invoke the doctrine of assumption of risk, it is essential that the risk or danger shall have been known to, and appreciated by, plaintiff. No risk is assumed of which plaintiff was ignorant. Logically, plaintiff cannot make an intelligent choice to confront a risk if he does not actually know of the danger, or know such facts as would in law charge him with knowledge of the danger and appreciation thereof. Knowledge of the particular risk or danger and an appreciation of the magnitude thereof are independent and essential elements of the doctrine of assumption of risk. In order to assume the risk of a particular act or condition one must know and appreciate the danger itself and not just the facts which constitute it.

"The knowledge required is actual knowledge as distinguished from constructive notice or knowledge. The mere fact that plaintiff would, in the exercise of ordinary care, have known or appreciated the danger is not sufficient. Where the facts are such that plaintiff must have had knowledge, the situation is equivalent to actual knowledge; but where it merely appears that he should or could have discovered the danger, the defense is contributory negligence and not assumption of risk."

The facts in this case clearly establish (a) that plaintiff believed the ladder was not properly positioned in the first instance by defendant A. O. Hamnes; (b) that plaintiff repositioned the ladder; and (c) that plaintiff did not observe, and was not consciously aware, that Hamnes had again repositioned the ladder in plaintiff's absence.

Defendants contend that even if plaintiff was not specifically aware of the repositioning of the ladder that knowledge should be imputed to him because the ladder was in plain sight and is a simple tool with which it must be assumed he is familiar. While that legal theory is applicable with respect to obvious dangers

such as the slipperiness of ice or the danger of falling objects to one who is walking under a ladder on a busy construction site,[2] we do not believe it is applicable here.

Hamnes' repositioning of the ladder was not an act which plaintiff could reasonably anticipate nor one which he should be held to have known as a matter of common sense or as a matter of law. It was a gratuitous act on the part of Hamnes of which plaintiff had no actual notice. Therefore, it is clear that plaintiff's failure to note the change in the ladder's position goes to the question of his contributory negligence and not to the question of whether he assumed the risk. Restatement, Torts 2d, § 496 D, *Comment b,* states:

"* * * [T]he condition of premises upon which [plaintiff] enters may be quite apparent to him, but the danger arising from the condition may be neither known nor apparent, or, if known or apparent at all, it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk. His failure to exercise due care either to discover or to understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence."

Likewise, Prosser, Torts (4 ed.) § 68, p. 448, states:

"* * * [Plaintiff's] failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence."

---

[2] Restatement, Torts 2d, § 496 D, *Comment d,* states in part as follows: "* * * There are some risks as to which no adult will be believed if he says that he did not know or understand them. Thus an adult who knowingly comes in contact with a fire will not be believed if he says that he was unaware of the risk that he might be burned by it; and the same is true of such risks as those of drowning in water or falling from a height, in the absence of any special circumstances which may conceal or appear to minimize the danger. One who has spent a substantial time upon particular premises ordinarily would be found in fact to understand and appreciate the normal, ordinary risks of those premises, such as the danger from moving trains in a railroad switching yard."

It is apparent that the jury also considered plaintiff's acts in the perspective of his own negligence since they found him to be 30 percent responsible for causing his own injuries. Under the facts of this case, we hold that assumption of risk was inapplicable and should not have been submitted to the jury because plaintiff did not know and appreciate the risk which was involved in ascending the repositioned ladder.

■ Defendants assert that there is insufficient evidence of negligence on their part, that the damages awarded were excessive, and that the trial court erred in submitting the issue of plaintiff's diminished earning capacity to the jury.

While defendant A. O. Hamnes had no duty to offer the use of the ladder, he did have a duty to use due care once the ladder was provided. Obviously, the jury found that Hamnes negligently and unsafely repositioned the ladder with no notice to plaintiff and that his negligent act was a direct cause of the accident. After reviewing the record, we hold there is sufficient evidence to support the jury's conclusion that defendants were negligent.

Plaintiff suffered severe injuries as a result of the fall. He was hospitalized for 3 weeks with a broken hip, wrist, and finger. After a steel plate was inserted in his hip, he spent more than 13 weeks in the University of North Dakota Rehabilitation Hospital receiving therapy and was on crutches for more than 4 months following the hospitalization. He still uses a cane occasionally and has continuing pain in the hip. He has permanent disability and has incurred special damages in excess of $10,000. Under these circumstances, we hold the damages awarded were not excessive and that the issue of future impairment of plaintiff's earning capacity was properly submitted to the jury.

Reversed with instructions to enter judgment for plaintiff pursuant to the jury's special verdicts.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.