Tara J. SNILSBERG, Appellant (C1–00–75), Respondent (C5–00–323),

v.

LAKE WASHINGTON CLUB, a dissolved corporation, d/b/a Lake Washington Club, Inc., et al., Respondents (C1–00–75), Defendants (C5–00–323),

Jonathan T. Rausch, Appellant (C5–00–323),

Ellsworth B. Beetch, Respondent (C1–00–75),

Harlan H. Bloomer, Respondent (C1–00–75),

Joe Roe, et al., Defendants (C1–00–75).

Nos. C1–00–75, C5–00–323.

Court of Appeals of Minnesota.

July 25, 2000.

Stephen S. Eckman, Kristen R. Rice,
Thomas F. Handorff, Eckman, Strandness

& Egan, P.A., Wayzata, for appellant/respondent Tara J. Snilsberg.

Thomas A. Gilligan, Jr., Shelly B. Martin, Murnane, Conlin, White & Brandt, St. Paul, for respondent/appellant Jonathan T. Rausch.

Kurt D. Johnson, Dustan J. Cross, Gislason & Hunter, L.L.P., New Ulm, for respondent Lake Washington Club.

Kenneth R. White, Farrish Johnson Law Office, Mankato, and Gerald L. Maschka, Maschka, Riedy & Ries, Mankato, for respondent Ellsworth Beetch.

James A. Reding, Jr., Lars C. Erickson, Reding & Pilney, Oakdale, for respondent Harlan Bloomer.

## OPINION

### EDWARD J. PARKER, Judge.*

In these consolidated appeals, Tara Snilsberg appeals the district court order granting summary judgment to respondents Beetch, Bloomer, and the club. She argues that primary assumption of the risk does not apply and that Beetch, Bloomer, and the club owed her duties of care and warning directly, and are also subject to vicarious liability for the conduct of the caretaker, Jonathan Rausch. Rausch appeals from the denial of his motion for summary judgment, claiming that primary assumption of the risk applies to preclude all of Snilsberg's claims against all defendants. The district court certified the question, raised in Rausch's appeal, of "whether primary assumption of the risk as to the Plaintiff necessarily bars all claims against all Defendants named in this action."

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## FACTS

On July 17, 1997, after consuming alcohol with friends inside the cabin of her host, the caretaker at the Lake Washington Club, Tara Snilsberg dove off a dock in the dark and struck her head on the bottom of the lake. As a result of the accident, Snilsberg, who was then 19, became paralyzed from the neck down.

The Lake Washington Club, an unincorporated association, occupied improved beachfront property on Lake Washington that included three docks, two of which were used for club members' boats. Snilsberg was diving off the third dock, known as the caretaker's dock, when she was injured. The caretaker's dock was shorter than the others and was used as a service dock. The club grounds also included a pavilion, a tool shed, and the caretaker's cabin. Ellsworth B. Beetch and Harlan H. Bloomer were members, directors, and officers of the club at the time of the accident.

The club published a spring newsletter each year listing its general rules of operation, including a rule prohibiting alcohol on club property. There were no rules or signs restricting swimming or diving on club premises. Beetch testified in a deposition that diving was discouraged because the water was too shallow.

Each summer the club employed a caretaker. For the summer of 1997, it was Jonathan Rausch, who was 26 at the time and maintained a separate painting business. As caretaker, Rausch's duties included emptying garbage, mowing the lawn, cleaning and raking the beach, cleaning restrooms, and phoning the appropriate club member if there was a problem with a boat. He had no scheduled hours and could complete his duties at any time of day. He was paid a salary for the summer and, as part of his compensation, lived in the caretaker's cabin.

Minn. Const. Art. VI, § 10.

The cabin was considered the caretaker's private residence, and Rausch was free to entertain guests there. Although there was a rule prohibiting alcohol on club grounds, the caretaker was free to have alcohol in the cabin. The record contains a copy of a 1989 letter to members stating that the no-alcohol rule was to be enforced by the caretaker. In a deposition, one board member, Robert Fitterer, testified that it was understood that the caretaker's duties included enforcing club rules, including the no-alcohol rule. The other board members testified they did not believe the caretaker was responsible for enforcing club rules.

Tara Snilsberg's grandfather was an active member of the club and rented a slip at the club for his boat. Since her childhood, she had frequented the club during the summer. Snilsberg was at the club nearly every day during the summer of 1997, and she began dating Rausch in June or July of that year.

There was testimony that Snilsberg was a strong swimmer and had been on her school's diving team. In her deposition, she testified she had not gone swimming in the club's swimming area since she was a small child, but earlier that summer she had waded into the club's swimming area up to her waist. Also earlier that summer, while working on a boatlift with Rausch, she was in the water near the end of the caretaker's dock. Snilsberg also stated in her deposition that she knew, as a matter of common sense, it was hazardous to dive into shallow water.

The night of the accident was not Snilsberg's first experience drinking alcohol. She had two underage-consumption violations and had consumed alcohol several other times. She had voluntarily consumed alcohol at a party at Rausch's cabin earlier that summer.

On July 17, 1997, Snilsberg and Rausch left the club in the evening to go out to dinner. Beetch saw them as they left for dinner and testified in his deposition that they did not appear intoxicated. At dinner they split one glass of beer. They returned to the club later that night and joined a group of friends. In the cabin with the group, Snilsberg consumed two or three mixed drinks and "a couple of shots" of hard liquor. She testified she wanted to fit in with Rausch and the crowd. At some point, someone suggested they go swimming or skinny-dipping. In her deposition, Snilsberg said she had been skinny-dipping with Rausch and another friend once before in her grandfather's pool.

A group including Snilsberg went toward the water around the caretaker's dock. Snilsberg testified in her deposition that she recognized the effects of alcohol and felt intoxicated when she went down toward the water. There was conflicting testimony about whether Rausch, who entered the water ahead of Snilsberg, dove in headfirst off the dock or simply jumped into the water.

Snilsberg was the last to enter the water. She said in her deposition that she did not try to gauge the water's depth because, unclad, she was trying to enter the water as quickly as possible. A witness from the party testified that no one appeared obviously intoxicated and that she saw no one pressure Snilsberg to drink. In her deposition, Snilsberg acknowledged that she used poor judgment or no judgment in diving into the water.

Snilsberg filed a five-count personal-injury complaint against Rausch, the club, Ellsworth Beetch, Harlan Bloomer, and John and Jane Roe, as members of the club; she alleged negligence by all parties and claimed the club and its members were vicariously liable for Rausch's conduct.

Following extensive discovery and a hearing, the district court granted summary judgment for Beetch, Bloomer, and the club and denied summary judgment for Rausch. The court found that Snilsberg: "was vastly familiar with the land and water comprising the Lake Washington Club premises," "was familiar with the

water at the edge of the dock from which she dove and understood its depth," "knew that diving into shallow water was dangerous," "was an experienced diver," and "demonstrated poor judgment or no judgment when she chose to dive off the dock;" that Snilsberg's judgment "was affected by her intoxication;" that there was a fact question as to whether Rausch supplied alcohol to Snilsberg at the caretaker's cabin; that the party that night was outside the scope of Rausch's employment; and that Beetch, Bloomer, and the club breached no duty of care to Snilsberg.

The district court further ruled that: (1) there was no genuine issue of material fact for Snilsberg's claim of negligent maintenance and operation; (2) the record did not establish that Snilsberg lacked the ability to protect herself or that Beetch, Bloomer, or the club had power over her welfare creating a duty to warn her or protect her from harm; (3) Beetch, Bloomer, and the club were protected by the recreational use immunity statute, Minn. Stat. § 604A.22 (1996); (4) Snilsberg's assumption of the risk eliminated liability for Beetch, Bloomer, and the club; (5) Rausch's conduct was outside the scope of his employment such that vicarious liability did not apply to the other defendants; and (6) there were disputed fact issues preventing summary judgment for Rausch, including (a) whether he had negligently provided alcohol to Snilsberg and thereby committed a common law tort under Minn. Stat. § 340A.801, subd. 6 (1996), and (b) whether he had a duty to warn Snilsberg, and (c) whether Snilsberg's injuries were a direct result of Rausch's alleged negligence and Snilsberg's resulting intoxication.

By an amended order, the district court further denied Rausch's motion to dismiss based on primary assumption of risk and certified as doubtful and important, so as to allow immediate appeal from that order, the issue: "Whether primary assumption of risk as to the Plaintiff necessarily bars all claims against all Defendants named in this action."

## ISSUES

1. Did the district court err in granting summary judgment to Beetch, Bloomer, and the club?

2. Did the district court err in denying summary judgment to Rausch?

## ANALYSIS

In reviewing an appeal from summary judgment, this court asks (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The evidence must be viewed in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

### Assumption of the Risk

 Minnesota law recognizes two types of assumption of the risk. *Swagger v. City of Crystal*, 379 N.W.2d 183, 184 (Minn.App.1985), *review denied* (Minn. Feb. 19, 1986). Primary assumption of the risk arises when parties "have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks." *Andren v. White–Rodgers Co.*, 465 N.W.2d 102, 104 (Minn.App.1991) (quoting *Olson v. Hansen*, 299 Minn. 39, 44, 216 N.W.2d 124, 127 (1974)), *review denied* (Minn. Mar. 27, 1991). The defendant has no duty to protect the plaintiff from the well-known, incidental risks assumed, and the defendant is not negligent if any injury to the plaintiff arises from an incidental risk. *Id.* By contrast, secondary assumption of the risk is a form of contributory negligence in which the defendant has created a hazard that is known, appreciated, and voluntarily encountered by the plaintiff, but the defendant is not relieved of his duty of care with respect to the hazard. *Id.*

 In primary assumption of the risk, "[b]y voluntarily entering into a situa-

tion where the defendant's negligence is obvious," by his conduct, the plaintiff consents to the defendant's negligence and "agrees 'to undertake to look out for himself and relieve the defendant of the duty.'" *Id.* at 105 (quoting W. Keeton, et al., *Prosser and Keeton on Torts,* § 68, at 485 (5th ed.1984)). Generally a question for the jury, the applicability of primary assumption of the risk may be decided by the court as a matter of law "when reasonable people can draw only one conclusion from undisputed facts." *Jussila v. U.S. Snowmobile Ass'n,* 556 N.W.2d 234, 236 (Minn.App.1996) (citing *Andren,* 465 N.W.2d at 105), *review denied* (Minn. Jan. 29, 1997).

**Duty to the Plaintiff**

 The first step in determining whether primary assumption of the risk applies is to determine "whether the defendant owed a duty to the plaintiff." *Baber v. Dill,* 531 N.W.2d 493, 495 (Minn. 1995) (stating that "[i]f no duty exists there is no need to determine whether a person assumed the risk thus relieving the defendant of the duty"). Snilsberg claims Beetch, Bloomer, and the club owed a duty of reasonable care for her safety as an entrant on the club premises, including a duty to inspect and repair the premises and to warn her and protect her from risks of harm caused by the condition of the premises. *See State v. Hoyt,* 304 N.W.2d 884, 890 (Minn.1981) (stating person visiting a tenant, resident, or occupier of land with express or implied consent is entrant rather than trespasser); *Peterson v. Balach,* 294 Minn. 161, 174, 199 N.W.2d 639, 647 (1972) (stating possessor of land owes entrants duty of reasonable care). But the landowner's duty to entrants does not include situations where the risk of harm is obvious or known to the plaintiff, unless the landowner should anticipate the harm despite the obviousness of the risk. *Lawrence v. Hollerich,* 394 N.W.2d 853, 855 (Minn.App.1986), *review denied* (Minn. Dec. 17, 1986); Restatement (Second) of Torts § 343A (1965).

The risk of harm here was the commonsense danger that the water off the shorter service dock may have been too shallow for diving. Our review of the record establishes that reasonable people could have drawn only one conclusion: Beetch, Bloomer, and the club had no duty as landowners to warn Snilsberg of this obvious risk.

 Snilsberg also argues defendants Beetch and Bloomer had a "special relationship" with her that created a duty of care to protect her from Rausch's conduct. While generally a defendant has no duty to prevent a third person from harming another, a duty exists if (1) there is a special relationship creating a right to protection and (2) the harm is foreseeable. *Lundgren v. Fultz,* 354 N.W.2d 25, 27 (Minn.1984). Special relationships giving rise to a duty to warn have been found between injured persons and possessors of land who hold it open to the public and persons having custody of another where the other lacks normal opportunities for self-protection. *Harper v. Herman,* 499 N.W.2d 472, 474 (Minn.1993). Because the accident occurred on club property, which was not open to the public, the first example has no application here.

With respect to a special relationship arising from a person's lack of normal opportunities for self-protection, in *Harper,* the supreme court held that the open and obvious nature of the hazard precluded finding a special relationship existed between a boat owner and an inexperienced diver who injured himself by diving off the boat into shallow water. *Id.* at 472–75. Snilsberg claims *Harper* does not control here because her intoxication impaired her ability to protect herself from the risk. But her intoxication cannot increase any duties of Beetch, Bloomer, and the club as landowners because they did not provide alcohol to Snilsberg. These parties clearly had no control over Snilsberg's actions. *See Gilbertson v. Leininger,* 599 N.W.2d 127, 131–32 (Minn.1999)

(finding no special relationship between hosts and dinner guest who had consumed alcohol, stayed overnight, and was injured, because defendants had no physical custody or control of guest, were not entrusted with guest's health, and did not accept responsibility to care for guest's physical condition); *Doe v. Brainerd Int'l Raceway, Inc.*, 533 N.W.2d 617, 622 (Minn.1995) (finding landowner owed no duty to invitee whose voluntary actions, including drug and alcohol consumption, subjected her to obvious and "subjectively appreciated" dangers).

 In light of the possibility, recognized by the district court, that Rausch was negligent, there remains a question of whether Beetch, Bloomer, and the club could be subject to vicarious liability as employers of Rausch. An employer may be held liable for negligent acts of an employee committed in the course and scope of employment. *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 15 (Minn. 1979).

 Whether a defendant's negligence was committed within the scope of employment is ordinarily a fact question for the jury, but when the evidence is conclusive on all the elements or there is no evidence to support a necessary element, there is no fact issue, and the scope of employment is determined as a matter of law. *Hentges v. Thomford*, 569 N.W.2d 424, 427 (Minn.App.1997). Factors to consider in determining whether negligent acts occurred in the scope of employment include whether (1) the conduct was to some degree in furtherance of the employer's interests, (2) the employee was authorized to perform the type of conduct, (3) the conduct occurred substantially within authorized time and space restrictions, and (4) the employer should reasonably have foreseen the conduct. *Id.* at 427–28.

 In view of the relevant factors, we hold, as a matter of law, that vicarious liability cannot apply here. Rausch's actions were personal in nature; there is no

credible basis from which to conclude that drinking at his private, on-site residence or swimming with friends in the nearby lake furthered the club's interests. Despite Rausch's undefined work hours, there is no question that he was not engaged in any of his caretaker duties at any relevant time. *See Walker v. Scott County*, 518 N.W.2d 76, 78 (Minn.App.1994) (stating where purpose of employee's acts is purely personal, employer is not liable), *review denied* (Minn. Aug. 24, 1994); *Laurie v. Mueller*, 248 Minn. 1, 4–9, 78 N.W.2d 434, 437–39 (1956) (holding resident caretaker's being on call for employer did not make employer liable for all activities of caretaker); *see also Hentges*, 569 N.W.2d at 428–29 (holding church not liable for pastor's negligence on hunting trip despite claim that pastor was acting in scope of employment by developing relationships with parishioners).

In addition, although Rausch was permitted to entertain guests at his cabin and had hosted a prior party at the club, the record does not establish that a late-night drinking and swimming party including an under-aged drinker was authorized or foreseeable by his employer. Because Rausch was not acting within the scope of his employment, the district court properly held that vicarious liability cannot apply on these facts.

In light of the foregoing analysis, we concur with the district court's conclusion that Beetch, Bloomer, and the club owed Snilsberg no duty of care and we affirm the court's grant of summary judgment to those parties on that basis. However, because Snilsberg also challenges the district court's grant of summary judgment to Beetch, Bloomer, and the club based on primary assumption of the risk, and because Rausch argues that the district court's finding that primary assumption of the risk bars Snilsberg's claims against Beetch, Bloomer, and the club also entitles him to summary judgment, we must also determine whether primary assumption of

the risk bars any or all of Snilsberg's negligence claims.

### Application of Primary Assumption of the Risk

Our review of the record shows that Snilsberg assumed the inherent risk of diving off of a dock into dark water. But evidence suggesting Rausch may have enlarged that risk by providing her with alcohol prevents the doctrine from applying to bar Snilsberg's claims against Rausch. As stated above, primary assumption of the risk applies to a plaintiff who "voluntarily exposes himself to a known and appreciated risk arising from another's negligence." *Parr v. Hamnes*, 303 Minn. 333, 337, 228 N.W.2d 234, 237 (1975) (citation omitted). It is shown if the plaintiff: (1) had knowledge of the risk, (2) had an appreciation of the risk, and (3) voluntarily chose to take the risk when faced with a choice of avoiding it. *Andren*, 465 N.W.2d at 104–05. Application of the doctrine requires actual, rather than constructive, knowledge. *Parr*, 303 Minn. at 338, 228 N.W.2d at 237–38.

The record establishes that Snilsberg was an experienced swimmer and diver. The danger of diving into a dark lake from a short dock is obvious to anyone with her experience. Her own testimony established that she knew and appreciated the risk of diving into shallow water. Diving into dark water of indeterminable depth is equally dangerous. There has been no showing of a material change in the depth of the lake at a material time. Thus, the record supports the district court's finding that Snilsberg was familiar with the water and should have appreciated the risk in the specific area where the accident occurred.

Her general knowledge as an experienced swimmer and diver, and her specific knowledge of the shallow water around the caretaker's dock, establish that Snilsberg had actual knowledge of the danger of diving into the lake from that dock. In addition, Snilsberg had ample opportunity to avoid the risk by declining to go swimming or by wading or jumping into the water. She chose voluntarily to expose herself to the risk and the district court correctly held that primary assumption of the risk applies.

The certified question of whether primary assumption of the risk bars all claims against all defendants is subject to de novo review. *In re Butler*, 552 N.W.2d 226, 229 (Minn.1996) (stating certified questions are reviewed de novo).

With respect to Snilsberg's negligence claims against Rausch, we agree that there are material facts in dispute regarding whether Rausch was negligent and whether Snilsberg had actual knowledge of such negligence. But because there was no showing that Beetch, Bloomer, or the club may be liable for Rausch's alleged negligence, fact questions as to Rausch's alleged negligence do not preclude application of primary assumption of the risk to bar Snilsberg's claims against those parties. Thus, we answer the certified question in the negative.

In her testimony, Snilsberg acknowledged she was not using good judgment when she dove off of the pier. She attributed her lack of judgment to alcohol consumption and to her haste to enter the water after disrobing. The record shows that she drank alcohol while at dinner with Rausch and then in Rausch's cabin with the group before going to the lake to swim. This evidence could provide a basis for a jury finding that Rausch enhanced or enlarged the inherent risk of diving from the dock at night by giving alcohol to his under-aged guest. *See Rusciano v. State Farm Mut. Auto. Ins. Co.*, 445 N.W.2d 271, 272 (Minn.App.1989) (holding primary assumption of the risk does not apply where there is evidence a defendant's conduct enlarged the inherent risk assumed by plaintiff). It is unclear from the record whether the evidence would be sufficient to allow a jury to find that Rausch also enlarged the risk by diving into the lake ahead of Snilsberg.

Nonetheless, Beetch, Bloomer, and the club are connected to the case only as landowners and employers. They were not present at the scene, and Rausch's conduct that night was not within the scope of his employment. Therefore, there can be no basis for holding Beetch, Bloomer, or the club responsible for any enlargement of the risk by Rausch, and Snilsberg's primary assumption of the risk with respect to Beetch, Bloomer, and the club is unaffected.

Because of our decision that primary assumption of the risk applies to Snilsberg's claims against Beetch, Bloomer, and the club but not against Rausch, we need not address the issues of whether the club, as an unincorporated association, is a proper party to this action, whether primary assumption of the risk may apply to Snilsberg's claim against Rausch under Minn. Stat. § 340A.801, subd. 6 (1996), or whether the recreational immunity statute provides additional grounds for summary judgment. Minn.Stat. §§ 604A.22, .25 (1996).

## DECISION

The district court properly granted summary judgment to Beetch, Bloomer, and the club based on primary assumption of the risk; it properly denied summary judgment to Rausch because there is evidence that his conduct may have enlarged or enhanced the inherent risk assumed by Snilsberg. The certified question is answered in the negative.

**Affirmed in part; certified question answered in the negative.**

