David **LEONZAL, et al., Respondents,**

v.

Alice **GROGAN, et al., Defendants,**

City of Duluth, **Appellant.**

No. **C2–93–1635.**

Court of Appeals of Minnesota.

May 17, 1994.

Review Denied July 27, 1994.

William P. Dinan, City Atty., M. Alison Lutterman, Asst. City Atty., Duluth, for appellant.

Michael Saeger, St. Paul, for respondents.

Considered and decided by KLAPHAKE, P.J., and SHORT, and DAVIES, JJ.

## OPINION

SHORT, Judge.

This personal injury action arose when police responded to a 911 call. David and Sharon Leonzal sued their neighbors and the City of Duluth for assault and battery, intentional infliction of emotional distress, negligence, deprivation of civil rights, outrageous and reckless disregard for rights, and abuse of government process. The city moved for summary judgment on the basis of vicarious official immunity. The Leonzals abandoned their claims against the city for deprivation of civil rights and abuse of process. On appeal from the trial court's denial of immunity, the city argues (1) police officers who respond to a 911 call are protected by official immunity, and (2) it is vicariously immune for the protected actions of its police officers.

## FACTS

The Leonzals did not get along with their neighbors. Verbal disagreements over parking positions escalated when the neighbors' dog came into the Leonzals' yard and bit their five-year-old child. When the Leonzals started to build a fence, a property line dispute erupted. The Leonzals painted a florescent orange line on the grass and the neighbors retaliated by throwing bricks and sticks into the Leonzals' yard. The fence did not make good neighbors; the conflict continued. The neighbors' dog dug holes under the Leonzals' fence and the Leonzals' flower garden was mysteriously destroyed. Between May and August of 1989, the police received ten calls for assistance from the Leonzals and their neighbors. In addition, the Leonzals filed five complaints against their neighbors with the city attorney's office.

On August 31, 1989, the neighbors called 911 and reported that David Leonzal was waving a shotgun outside his home and threatening the life of the neighbor and her dog. In response to this gun call, the police department sent several squad cars to the Leonzals' property. Because a shotgun was potentially involved, the officers positioned themselves outside the Leonzals' house with their weapons drawn. A desk sergeant telephoned David Leonzal, informed him of the neighbors' complaint, told him that there were several police officers outside his home, and asked if he would step outside to speak with them. Leonzal denied the neighbors' accusation, claimed that he and his wife had just tucked their child into bed and were relaxing at home, and then went outside and started shouting at the officers. The officers told Leonzal to "freeze and put his hands above his head." When Leonzal continued his verbal attack, he was ordered by the officers to lie face-down. Leonzal refused. Two officers then forced Leonzal to his knees, handcuffed him, and placed him in a squad car. While in the squad car, Leonzal told the officers where his guns were located. Several officers entered Leonzal's home, secured three hunting rifles, and spoke with Leonzal's wife and child. Leonzal sustained bruises from the incident, but did not seek medical treatment.

The neighborhood feud continued after that August incident. The police responded to an additional twelve calls between March of 1990 and June of 1991. Disagreements between the Leonzals and their neighbors resulted in several criminal prosecutions and restraining orders in 1991 and 1992.

## ISSUES

I.  Are police officers responding to a 911 call entitled to official immunity absent a showing of malicious conduct?

II. Is the city vicariously immune from liability for the alleged assaultive or reckless acts of its police officers?

## ANALYSIS

Summary judgment is appropriate where the record shows there is no genuine issue as to any material fact, and it is clear that the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. All material facts and inferences are construed in favor of the nonmoving party. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). When the moving party establishes a prima facie case, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn.1988) (citing *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986)).

■■■ An order denying summary judgment on the ground of immunity from suit is a final judgment for purposes of Minn.R.Civ. App.P. 103.03. *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986). Summary disposition is appropriate because the doctrine of immunity is designed not only to shield public officials from liability, but to spare public officials the burden of the legal proceeding itself. *McGovern v. City of Minneapolis,* 475 N.W.2d 71, 72 (Minn.1991). This case asks whether police officers were assaultive or reckless when they responded to a 911 call from the Leonzals' neighbors.

I.

■■■ Under the doctrine of official immunity, a public official charged by law with duties requiring the exercise of judgment is not personally liable to an individual for damage unless the official is guilty of a willful wrong. *Rico v. State,* 472 N.W.2d 100, 106–07 (Minn.1991); *Elwood v. County of Rice,* 423 N.W.2d 671, 677 (Minn.1988). Generally, police officers exercising their official duties are classified as "discretionary" rather than "ministerial" officers, and are thus afforded immunity in executing those duties. *Johnson v. Morris,* 453 N.W.2d 31, 42 (Minn. 1990). The applicability of official immunity depends on the nature of the act giving rise to the claim for relief. *Olson v. Ramsey County,* 509 N.W.2d 368, 371 (Minn.1993) (citing *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 722 (Minn.1988)). In this case, the Leonzals' claims stem from police officers' response to a 911 call.

■■■ At oral argument, the Leonzals suggested that official immunity is inapplicable because they did not sue the officers in their individual capacities and the officers have no personal exposure. We disagree. Under the indemnification statutes, there is no absolute guarantee the officers will avoid personal liability. *See* Minn.Stat. §§ 3.736, subd. 9a (1988) (state will indemnify peace officer if officer acting in good faith and not acting on behalf of private employer), 466.07, subd. 1 (1988) (state indemnification of officers available only where officer was acting

within scope of duties and not guilty of malfeasance, willful neglect, or bad faith). Further, indemnification and defense by a government agency does not preclude a finding of official immunity. *Pletan v. Gaines,* 481 N.W.2d 566, 569 (Minn.App.) (citing *Rico,* 472 N.W.2d 100), *aff'd,* 494 N.W.2d 38 (Minn. 1992).

■■■ An officer responding to a report of an armed person threatening the life of a neighbor must weigh many factors and exercise significant independent judgment and discretion. Is the person dangerous? Are the alleged threats real and serious? What is the mental and physical state of the person asking for help? To what extent may the situation be dangerous for other persons? These questions must be resolved under emergency conditions with little time for reflection and often on the basis of incomplete information. Such circumstances require the exercise of discretion that compels application of official immunity. *See, e.g., Pletan,* 494 N.W.2d at 41 (police officer immune for decision to continue high speed chase); *Johnson,* 453 N.W.2d at 42 (police officer immune for decision to shoot out truck tires, and handcuff and threaten man who had evaded arrest); *Elwood,* 423 N.W.2d at 679 (deputy sheriffs immune for decision to enter home and restrain man who was making threats); *McGovern v. City of Minneapolis,* 480 N.W.2d 121, 126 (Minn.App.) (police officers immune for decision to use a front end loader to execute a search warrant on a crack house), *pet. for rev. denied* (Minn. Feb. 27, 1992); *Reuter v. City of New Hope,* 449 N.W.2d 745, 751 (Minn.App.) (officers immune for response to a suspicious vehicle call and a woman who they believed to be mentally unbalanced), *pet. for rev. denied* (Minn. Feb. 28, 1990).

■■■ The Leonzals agree that the police should take strong action in an actual life-or-death situation, but argue police knowledge of their neighbors' irrational mental state and previous "bogus" reports change the import of that 911 call. We disagree. The record demonstrates *(a)* only some officers who responded to the call were familiar with the dispute between the Leonzals and their

neighbors; *(b)* the officers approached the house with guns drawn due to the potential involvement of guns, *see* Minn.Stat. § 609.-06(1)(d) (1988) (officer may use reasonable force in performing duty); *(c)* David Leonzal was aggressively vocal and refused to follow the officers' instructions; *(d)* after he was handcuffed, Leonzal told the officers where his guns were located; *(e)* the officers secured all weapons before releasing Leonzal; and *(f)* an expert witness testified by affidavit that the police officers used appropriate tactics in responding to the 911 call, and that the history of the Leonzals' relationship with their neighbors suggested the situation could be violent. Under these facts, the city established a prima facie case that the officers responded to the 911 call reasonably, lawfully, and in good faith. While the Leonzals argue there is a fact issue regarding justification for the "police raid," they fail to present competent evidence of malicious conduct by the officers. The Leonzals cannot rest on the allegations of the complaint and their unexecuted affidavits when presented with the officers' sworn statements and supporting expert testimony. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552 (party must make sufficient showing of existence of essential element of case to survive summary judgment).

The weighing of the potential risks of injury versus the odds the 911 report was false is a matter of discretion appropriately reserved to the police officers. The record contains a thorough explanation of the officers' reasons for responding to the 911 call. The Leonzals provided no specific evidence of bad faith. Under these circumstances, the police officers are protected from liability by the doctrine of official immunity and there is no genuine issue of fact preventing the grant of immunity.

## II.

The city vicariously enjoys the official immunity conferred upon its employees where the threat of liability against the city would undermine the purposes of official immunity. *Pletan,* 494 N.W.2d at 42; *S.L.D. v. Kranz,* 498 N.W.2d 47, 51 (Minn.App.1993). The test is whether the officers would think their performance was being evaluated so as to chill the exercise of their independent judgment. *Pletan,* 494 N.W.2d at 42.

Subjecting the city to liability for actions of police officers in responding to a 911 call would unquestionably inhibit the officers from exercising their independent judgment because liability would continue to stem from the officers' performance of their duties. *Olson,* 509 N.W.2d at 372; *Pletan,* 494 N.W.2d at 42. If the judiciary must review the conduct of immunized police officers to impose liability on the city, the purpose of official immunity essentially would be defeated. *Pletan,* 494 N.W.2d at 42. Such circumstances are present here and militate in favor of extending official immunity to the governmental employer as a matter of public policy.

## DECISION

An officer's response to a 911 call involves the exercise of discretion. Because the Leonzals failed to show willful or malicious conduct by the police officers, the officers are protected from liability under the doctrine of official immunity. For policy reasons, that immunity also protects the City of Duluth as the officers' public employer.

**Reversed.**