Kelly Eve BROWN, Appellant,

v.

**CITY OF BLOOMINGTON,
et al., Respondents.**

No. A04–2221.

Court of Appeals of Minnesota.

Dec. 6, 2005.

Albert T. Goins, Sr., Joanna L. Woolman, Goins & Wood, P.C., Minneapolis, MN, for appellant.

Jon K. Iverson, Jason J. Kuboushek, Iverson Reuvers, LLC, Bloomington, MN, for respondents.

Considered and decided by WORKE, Presiding Judge; STONEBURNER, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

Appellant Kelly Eve Brown challenges the district court's grant of summary judgment in favor of respondents in appellant's action for damages after being shot by a police officer who was responding to appellant's 911 call. Appellant contends that the district court erred in finding that the officer was entitled to official immunity because: (a) the officer's acts were ministerial and not discretionary; and (b) there were disputed factual issues surrounding the immunity determination. We affirm in part, reverse in part, and remand for further proceedings on the remaining issues.

## FACTS

In December of 2000, Bloomington police responded to a 911 call from appellant Kelly Eve Brown, who was threatening to cut the throat of a man at her residence. Brown suffers from clinical depression, and on the date in question she was not medicated and had been drinking. After two officers arrived at the scene and approached the residence, Brown continued to threaten the man and also threatened an officer who had reached the door. The man was able to leave the residence after which Brown threatened to cut her own throat. Other officers arrived and set up a perimeter around the residence. For several minutes, the officers attempted to talk with Brown and calm her down.

The officers at the scene determined that the situation called for the use of "less-lethal" or beanbag ammunition and broadcast a request via police radio for the next responding officers to bring less-lethal ammunition to the scene. Officer Daniel Duerksen heard the request and stated he would bring the less-lethal ammunition. On arrival, he unloaded lethal ammunition from his shotgun. Officer Duerksen showed a less-lethal shell to one of the other officers on the scene, who confirmed it as such; Duerksen then chambered the less-lethal shell. Officer Duerksen then loaded, or "topped off," the shotgun with two more shells from a sleeve on the side of the weapon. Officer Duerksen intended to load less-lethal shells and believed these were less-lethal shells, but they were, in fact, lethal slug rounds. Less-lethal ammunition was stored in a separate sleeve on the stock of the weapon, pursuant to department practice. According to Officer Duerksen's deposition testimony, he had received departmental training for a safe procedure for employing less-lethal ammunition prior to this incident, and his training suggested that the transition from lethal to less-lethal ammunition be made "away from the area where the incident was taking place."

By this time the officers had backed away from the door and were standing approximately ten feet from the bottom step of the residence as Brown exited the residence, holding a knife to her throat. She did not comply with commands to drop the knife, and Officer Duerksen fired the first shot. The first round, which was the less-lethal round, struck Brown in the right leg. But because Brown did not immediately drop the knife, Officer Duerksen fired a second round—a lethal slug—which caused severe injury to Brown's left thigh.

Brown was charged with assault and subsequently acquitted. She sued the City of Bloomington, its police chief, and the officers present at the scene in federal court claiming, inter alia, assault, battery, intentional infliction of emotional distress, and negligence. The federal district court dismissed with prejudice all civil-rights claims based on 42 U.S.C. § 1983 (2000), and Brown filed the remaining claims in state court.

Following further discovery, respondents moved for summary judgment and the district court granted the motion. The district court held that individual respondents were entitled to official immunity for their actions, respondent City of Bloomington was entitled to statutory immunity and vicarious official immunity, and that Brown had not established a human-rights claim under Minn.Stat. § 363.03, subd. 4(1) (2004). This appeal follows.

## ISSUES

I. Did the district court err in determining that the officer's actions were discretionary and not ministerial and thus entitled to official immunity?

II. Did the district court err by resolving disputed material facts relevant to its determination of immunity?

## ANALYSIS

■■ On an appeal from summary judgment, we determine "whether there are genuine issues of material fact and whether the district court erred in applying the law." *Watson by Hanson v. Metro. Transit Comm'n,* 553 N.W.2d 406, 411 (Minn.1996). Summary judgment is appropriate when a governmental entity has established that its actions are immune from civil liability. *Gutbrod v. County of Hennepin,* 529 N.W.2d 720, 723 (Minn. App.1995). The issue of whether immuni-

ty applies is a legal question subject to de novo review. *Gleason v. Metro. Council Transit Operations,* 582 N.W.2d 216, 219 (Minn.1998). The burden of proof that immunity applies is on the party claiming immunity. *Rehn v. Fischley,* 557 N.W.2d 328, 333 (Minn.1997).

## I

■■ Official immunity is a common-law doctrine intended to protect government officials from suit for discretionary actions taken in the course of their official duties. *Sletten v. Ramsey County,* 675 N.W.2d 291, 299 (Minn.2004). An official given a legal duty which calls for an exercise of judgment or discretion will not be held personally liable for damages resulting from execution of the duty unless he is guilty of a willful or malicious wrong. *Elwood v. County of Rice,* 423 N.W.2d 671, 677 (Minn.1988).

■■ Generally, police officers are classified as discretionary officers entitled to official immunity. *Johnson v. Morris,* 453 N.W.2d 31, 41–42 (Minn.1990); *see also Elwood,* 423 N.W.2d at 678 (stating that police responding to emergencies such as domestic disputes "are afforded a wide degree of discretion precisely because a more stringent standard could inhibit action"). A discretionary decision requires professional judgment to balance multiple factors, while a ministerial decision is absolute, certain, and involves the mere execution of a specific duty under designated facts; official immunity is not available when an officer is exercising a ministerial duty. *Wiederholt v. City of Minneapolis,* 581 N.W.2d 312, 315–16 (Minn.1998); *see also Watson,* 553 N.W.2d at 414. The district court determined that official immunity applied because even though an officer mistakenly loaded a less-lethal round, the officers were responding to a volatile, unpredictable domestic situation

in which they constantly exercised their judgment, including their decision on whether to use force, and the degree of force to be used.

■ "Whether official immunity applies requires the court to focus on the nature of the particular act in question." *Johnson*, 453 N.W.2d at 42. Respondents characterize the challenged conduct as the officers' collective response to a volatile and unpredictable domestic situation. Brown, on the other hand, characterizes the challenged conduct much more narrowly; specifically, Officer Duerksen's misloading of his shotgun with lethal instead of nonlethal ammunition. We conclude that Brown's characterization more accurately pinpoints the particular act to be examined in the analysis of whether official immunity applies.

■ "When the job is simple and definite," as when a public official has a clear "duty to adhere to ordinances and statutes," the official is not entitled to immunity. *Wiederholt*, 581 N.W.2d at 316; *see also Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 660 (Minn.2004) ("The ministerial-conduct bar to official immunity arises when the allegation is that a ministerial duty was either not performed or was performed negligently."). But, a duty need not be imposed by law for us to construe it as ministerial. *Anderson*, 678 N.W.2d at 659. "[T]here is no logical reason that a sufficiently narrow standard that does not meet an 'imposed by law' criterion should not similarly make the conduct ministerial if the employee is bound to follow the standard." *Id.* (finding ministerial duty where teacher's conduct was governed by "department protocol").

■ We acknowledge that Officer Duerksen loaded his shotgun in response to an evolving, volatile circumstance and that

police responses in emergency situations have generally been afforded official immunity. *See Elwood*, 423 N.W.2d at 678 (stating that police officers, being charged with the duty to prevent crime and enforce the laws, are not purely "ministerial officers," in that many of their duties are of an "executive character involving the exercise of discretion") (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). When an official must make decisions with little time for reflection and on the basis of incomplete information, "[i]t is difficult to think of a situation where the exercise of significant, independent judgment and discretion would be more required." *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn.1992). For this reason, we agree with the district court that the decisions whether to *use* less-lethal ammunition and to fire more than one round were discretionary decisions entitled to official immunity.

■ But those decisions are not the particular act challenged. The particular act is not whether less-lethal ammunition should have been used or whether Officer Duerksen should have only fired one shot. Rather, the particular act at issue is the loading of less-lethal shells into a shotgun and whether that act calls for the exercise of independent judgment and discretion. We conclude that it does not. There is no discretion involved in loading less-lethal shells into a shotgun; it is a ministerial act. Officer Duerksen acknowledged in his deposition that he erred in not removing the lethal rounds from the sleeve of the shotgun:

Q. You realize that you made an error when you didn't take all the slug rounds out, correct?

A. I did not remove all the slug rounds from the side carrier of the shotgun that night.

Q. That's what you intended to do, correct?

A. It was my intention to completely remove all the rounds of lethal ammunition from that shotgun. ·

Q. Did that intention ever change up until the time that you shot Kelly Brown?

A. No, it did not. Just so I've—

Likewise, Officer Duerksen acknowledged that he exercised no discretion or judgment in retrieving and loading the gun:

Q. When you go retrieve a less lethal shotgun at the request of Officer Taylor, you're not exercising a tactical judgment or discretion at that time, are you?

A. No. If he calls for it, if that's what he needs I am going to help him and grab it.

Q. Right. If he expects you to come back with a less lethal shotgun, you're not going to come back with a shotgun loaded with lethal slug rounds, are you?

A. He requested something and I did what he asked where I grabbed the weapon that had the less lethal rounds on it.

Moreover, the existence of a department procedure for loading the shotgun underscores that Officer Duerksen's actions in this instance were ministerial. Officer Duerksen admitted in his deposition that he did not follow a Bloomington Police Department procedure for making the transition from lethal to less-lethal ammunition. Because there was no discretion involved in loading less-lethal ammunition and because a narrow standard on how to load less-lethal ammunition existed, we conclude that Officer Duerksen was performing a ministerial duty and is not entitled to the protection of official immunity from civil liability.

When a public official is entitled to official immunity, a municipal employer is often extended vicarious official immunity also. *See id.* at 42. But when, as here, we conclude that the official (Officer Duerksen) is not entitled to official immunity, vicarious official immunity will not protect respondent City of Bloomington. *See Wiederholt,* 581 N.W.2d at 316 (holding that because a city inspector was not entitled to official immunity, the city was not entitled to vicarious official immunity).[1]

We therefore reverse the district court's grant of summary judgment solely with respect to Officer Duerksen and the City of Bloomington's liability in tort and negligence, and remand for further proceedings. However, because the court properly determined the decisions of the other officers at the scene were discretionary and protected by official immunity and that Brown had not established a human-rights claim under Minn.Stat. § 363.03, subd. 4(1) (2004), we affirm the district court's grant of summary judgment on the remaining claims.

**II**

Brown also contends that the district court's grant of summary judgment was inappropriate because factual disputes remained "regarding respondents' negligence." She does not argue that the district court resolved factual issues regarding respondents' immunity but rather that a jury should decide if Officer Duerksen's alleged negligence harmed her. The record does not support Brown's contention that any of the officials respondents, so we do not address it here.

---

1. Brown does not challenge on appeal the district court's grant of statutory immunity to

cers' actions were willful or malicious, and the district court stated that she had failed "to present specific facts showing that the officers acted with malice or bad faith." Brown admitted that Officer Duerksen's firing of "the bean bag [round] was fair ... because of me trying to hurt myself." While she also stated that she felt the firing of the second round was "malicious," a plaintiff "may not rely on 'bare allegations of malice' to defeat a summary judgment, but must present specific facts evidencing bad faith." *Reuter v. City of New Hope,* 449 N.W.2d 745, 751 (Minn.App. 1990) (quotation omitted), *review denied* (Minn. Feb. 28, 1990).

The district court did not resolve whether Officer Duerksen acted negligently or recklessly;[2] the question before it was respondents' immunity and the facts that were relevant to that assessment. In light of our conclusion that Officer Duerksen was not entitled to official immunity, we simply reiterate our holding that Brown's remaining tort and negligence claims are remanded to the district court for further proceedings.

## DECISION

Because the loading of less-lethal ammunition into a shotgun is a ministerial act, a police officer is not entitled to official immunity for performing that act. Accordingly, the district court erred in granting summary judgment based on official immunity in favor of respondents Duerksen and City of Bloomington.

**Affirmed in part, reversed in part, and remanded.**

WORKE, Judge (dissenting).

I concur with the majority on all issues presented, with the exception of the conclusion that denies Officer Duerksen and the City of Bloomington official immunity from suit. On that issue, I respectfully dissent.

The majority's analysis focuses solely on the act of loading a shotgun. This narrow focus fails to consider the nature of the act leading up to and resulting in deployment of less-lethal and lethal rounds, i.e., Duerksen's exercise of judgment in deciding whether to use force, and the degree of that force. In my opinion, his acts are discretionary and immune from suit.

In determining whether an act is discretionary or ministerial "the crucial focus is upon the nature of the act." *Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn. 1988). As recognized by the district court, police officers who often work in uncertain circumstances generally act discretionarily. They are afforded "a wide degree of discretion precisely because a more stringent standard could inhibit action." *Elwood,* 423 N.W.2d at 678.

In its findings of fact, incorporated from the federal proceedings, the district court properly applied the facts of the defendant-officers' actions in responding to a rapidly changing, dangerous circumstance of a unique domestic-abuse situation. The district court noted that Duerksen arrived at Brown's residence within four minutes of the emergency 911 call, unloaded his shotgun while walking up to the residence, loaded a confirmed less-lethal round, and then loaded two slug rounds "thinking they were less-lethal rounds." When Brown did not comply with the command to drop the knife, Duerksen fired twice in rapid succession, the second shot coming as she was falling and dropping the knife. The district court stated that Duerksen was

---

**2.** Because we conclude that the officer had a ministerial duty to properly load his shotgun, we do not reach the issue of whether his actions were willful and malicious.

aware of the 21–foot zone in which a knife-wielding suspect could stab another person and "[t]he fact that one round was not less-lethal [did] not alter [its] analysis." The emergency *nature* of the specific act of loading the shotgun—not the act itself but its quality—was properly characterized by the district court as part of a "response to a highly volatile and unpredictable domestic situation."

Duerksen's incorrect loading of the shotgun certainly seems to have been negligent. But the simplicity of this specific action is not what we must consider. In considering whether he was performing a ministerial duty or exercising discretion, we must conclude that he was properly exercising his judgment and this was a proper exercise of his discretion. Duerksen was responding to a request, not a command or order, of a fellow officer. Per his training he certainly at that time could have exercised his discretion not to comply with the request. The request clearly cannot be what makes his actions ministerial, and the majority incorrectly concludes that a Bloomington Police Department procedure rigidly guided Duerksen's hand.

The Bloomington Police Department's use-of-force policy states that an officer shall have discretion to use less-lethal force, but does not govern the loading of a firearm. In his affidavit testimony, Duerksen described the department's procedure for implementing less-lethal ammunition not as a "policy" but as a part of his training. He also stated that it was a department "suggestion" that he transition from lethal to less-lethal rounds at a location away from the incident. "Suggestion" indicates that he had discretion as to when he should implement that change. Duerksen clearly states that he *did* rely on his training in loading the shotgun, the umbrella of training that he and his fellow officers received for responding to such emergencies: "I went back to what they

call relying on training where you don't think about what you do, you just act." Given the intensity of Duerksen's situation, we should expect an officer to rely on his training, even when that path precedes the mistake of extracting rounds from the wrong sleeve on the shotgun.

Our caselaw strongly favors immunizing the actions of civil servants in emergency situations. *Leonzal v. Grogan*, 516 N.W.2d 210, 213 (Minn.App.1994) ("An officer responding to a report of an armed person threatening the life of a neighbor must weigh many factors and exercise significant independent judgment and discretion."), *review denied* (Minn. July 27, 1994). It is a tragedy whenever any citizen must confront such circumstances. While it is especially tragic that Kelly Brown was wounded during the response, the law provides official immunity from suit in an emergency situation that requires protection of the public from imminent harm. This sound jurisprudence encourages an officer's mindful implementation of the tools and strategies designed to avert such tragedies. Citizens are afforded a reliable safeguard in the denial of immunity to an officer whose actions are willful or malicious. *Elwood*, 423 N.W.2d at 678.

The decision to use force, whether lethal or non-lethal, is probably the gravest discretion an officer must exercise. I do not see the sense of reintroducing the specter of liability to cloud an officer's judgment once that decision is implemented. If Duerksen subsequently erred by misloading the shotgun, as found by the district court, we should not, as a society, hold him civilly liable in any capacity for that error. Accordingly, I would affirm the district court's grant of summary judgment.