*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0589**

Katie Kaloustian,
Respondent,

vs.

Dakota Fence Co.,
Defendant,

Landscape Structures, Inc.,
Respondent,

Independent School District No. 152 of Clay County,
Appellant,

and

Dakota Fence Co.,
Third-Party Plaintiff,

Landscape Structures, Inc.,
third party plaintiff,
Respondent,

vs.

Lakes Country Service Cooperative,
third party defendant,
Respondent.

**Filed January 5, 2015**
**Affirmed**
**Reilly, Judge**

Clay County District Court
File No. 14-CV-13-880

Gary M. Hazelton, Nathan T. Cariveau, Hazelton Law Firm, PLLC, Bemidji, Minnesota (for respondent Katie Kaloustian)

William L. Moran, Michael M. Carter, Brent Kettelkamp, Murnane Brandt, St. Paul, Minnesota (for respondent Landscape Structures)

Jessica E. Schwie, Tessa M. McEllistrem, Jardine, Logan and O'Brien, PLLP, Lake Elmo, Minnesota; and

Michael T. Rengel, Pemberton, Sorlie, Ruffer & Kershner, P.L.L.P., Fergus Falls, Minnesota (for appellant)

Margaret A. Skelton, Timothy A. Sullivan, Ratwik, Roszak & Maloney, P.A., Minneapolis, Minnesota (for respondent Lakes Country Service Cooperative)

Considered and decided by Stauber, Presiding Judge; Chutich, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

Respondent initiated an action for personal injuries sustained when she fell off of a horizontal bar at an elementary playground and suffered permanent damage to her spinal cord. Appellant-school district moved for summary judgment and asserted affirmative defenses for recreational immunity and assumption of risk. The district court denied the motion, holding that there were genuine issues of material fact regarding (1) whether the school district had actual knowledge that the equipment was likely to cause serious bodily harm, precluding summary judgment in favor of the school district based on recreational immunity, and (2) whether respondent knew and appreciated the risks associated with the playground equipment, precluding summary judgment on the school

2

district's assumption-of-risk defense. Because we agree that there are genuine issues of material fact precluding summary judgment, we affirm.

## FACTS

Independent School District No. 152 of Clay County (school district) owns, operates, and maintains the Robert Asp Elementary School playground located at 910 11th Street North in Moorhead. The playground is an open recreational area with different types of playground equipment, including a set of horizontal bars. The lower bar is referred to as the "turning bar," and the upper bar is referred to as the "chinning bar." The chinning bar sits approximately 62 inches off of the ground, supported between two poles. The chinning bar was moved from another playground to the Robert Asp Elementary School playground in 2004 and used regularly by students and community members between 2004 and 2007.

On August 12, 2007, then 19-year-old respondent Katie Kaloustian (Kaloustian) went to the Robert Asp Elementary School to play on the playground with her friends. Kaloustian and her friends were the only people at the playground that evening. Kaloustian spent between 30 and 45 minutes swinging and then walked over to the bars and climbed onto the chinning bar to sit on it. Kaloustian back-flipped off the chinning bar and landed on her feet on the ground. Kaloustian had previously performed similar flips on other playground bars without injury.

Kaloustian climbed back onto the chinning bar to perform the back-flip a second time. During her second attempt, Kaloustian felt the bar "give," and she fell. Kaloustian stated that the bar was solid and did not move during her first try, but on the second

3

attempt she felt the bar spin as she was performing the backward-flip motion. Kaloustian's friends saw her hanging upside down from the bar by the backs of her knees, with her head pointed downward. Kaloustian fell head-first from the chinning bar and hit the ground. Paramedics and fire department personnel arrived and transported Kaloustian to the hospital.

Within a day or two after the incident, a lieutenant with the Moorhead fire department who initially responded to the scene returned to the playground to check the horizontal bars. He discovered that although the lower bar was solid, the higher bar "spun around." The lieutenant taped off the entire playground with black tape and told the school that the bar was a hazard and should be removed. The Monday following the accident, the school district operations coordinator walked to the playground with the fire department lieutenant and saw that the chinning bar was loose. The bar was later unbolted and removed from the playground.

In July 2011, Kaloustian initiated a civil suit against playground-designer Landscape Structures, Inc., playground-installer Dakota Fence Co., and the school district, asserting claims for negligence, strict liability, and breach of warranty.[1] Kaloustian alleges that the "chinning bar loosened and rotated, causing [her] to fall in the inverted position directly on her head," resulting in "severe injuries to her spinal cord, chest, head and neck, rendering her a quadriplegic." Kaloustian claims that the school district is negligent because it failed to properly maintain and repair the chinning bar.

---

[1] In November 2013, Kaloustian and Dakota Fence Co. reached a settlement.

4

In November 2013, R.P. and C.P. submitted affidavits stating that they were former students at Robert Asp Elementary School and had experience with the chinning bar. R.P. attended the school between 2003 and 2008 and stated that the chinning bar was loose and rotated inside its clamps. C.P. also submitted an affidavit stating that she attended the school between 2004 and 2010 and notified a female teacher that the chinning bar was loose and rotated in the clamps. R.P. and C.P. are Kaloustian's second-cousins. The school's director of property services disputes this account, claiming that no one had seen the chinning bar "loosen, rotate, or move in any way." The property services director was not aware of anyone else having been injured on the chinning bar or any other type of similar equipment on the school district's playgrounds.

The school district did not receive a complaint about the condition of the chinning bar at Robert Asp Elementary School prior to Kaloustian's 2007 accident. Certified playground inspectors performed routine assessments of the playground equipment, including inspections in September 2006, October 2006, December 2006, February 2007, and April 2007. The school's custodians and teachers also routinely checked the playground equipment for safety hazards. The school district held annual trainings with the custodians and provided safety checklists for the playground inspections. These inspections included ensuring that the playground equipment was in good condition, checking for wear spots on swings or chains, checking for vandalism, checking for loose footings, and ensuring that the surface under the playground equipment was properly raked. According to the property services director, "[n]o issues were discovered with the chinning bar or any other similar playground equipment during these inspections and

observations." The lead custodian agreed that he never discovered any issues with the chinning bar or other pieces of playground equipment during his inspections and did not consider the playground unsafe.

The school district moved for summary judgment on Kaloustian's negligence claim, arguing that her claims are barred by the doctrine of recreational immunity under Minnesota Statute section 466.03, subdivision 6e, and by Kaloustian's primary assumption of the risk. The district court denied the school district's motion. This interlocutory appeal followed.

## D E C I S I O N

On appeal from summary judgment, we ask "(1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). "Summary judgment is appropriate when a governmental entity has established that its actions are immune from civil liability." *Brown v. City of Bloomington*, 706 N.W.2d 519, 522 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). Whether immunity applies is a legal question which we review de novo. *Id.* The school district, as the party claiming recreational immunity, bears the burden of establishing that immunity applies. *Id.*

### I.

The school district asserts that it is entitled to summary judgment under Minnesota's recreational immunity doctrine. Generally, a municipality is subject to liability for its torts. Minn. Stat. § 466.02 (2014); *see also* Minn. Stat. § 466.01, subd. 1 (2014) (incorporating school districts into the definition of "municipality"). However,

6

under the doctrine of recreational immunity, a school is immune from "[a]ny claim based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services." Minn. Stat. § 466.03, subd. 6e (2014). But recreational immunity does not apply "for conduct that would entitle a trespasser to damages against a private person." *Id.*

Minnesota adopted the standard of liability to adult trespassers set out in the Restatement (Second) of Torts § 335 (1965). *Krieger v. City of St. Paul*, 762 N.W.2d 274, 276 (Minn. App. 2009). This section imposes liability if the possessor of land

> (1) creates or maintains an artificial condition, (2) that the possessor knows is likely to cause death or serious bodily harm, (3) where the possessor has reason to believe that trespassers will not discover the condition, and (4) the possessor has failed to warn of the condition and the risk involved.

*Id*. (citing Restatement (Second) of Torts § 335 (1965)).

A plaintiff must establish that all elements of this section have been met in order to defeat an immunity claim. *Stiele ex rel. Gladieux v. City of Crystal*, 646 N.W.2d 251, 255 (Minn. App. 2002). On appeal, the school district argues that the district court erred in denying its motion for summary judgment because the evidence does not demonstrate that (A) the school district had actual knowledge of a hazardous condition on the playground, or (B) that the condition was inherently dangerous such that it was likely to cause death or serious harm.

7

## A.

When evaluating the trespasser exception to recreational immunity, Minnesota courts require the landowner to possess "actual knowledge" of a dangerous condition. *Lundstrom v. City of Apple Valley*, 587 N.W.2d 517, 520 (Minn. App. 1998) (citing Restatement (Second) of Torts § 335 (1965)); *see also Krieger*, 762 N.W.2d at 278 ("Actual knowledge is required."); *Prokop v. Indep. Sch. Dist. No. 625*, 754 N.W.2d 709, 715 (Minn. App. 2008) (declining to apply a constructive-knowledge standard). The school district maintains that it has never received a report of an injury on the school playground equipment prior to Kaloustian's injury. A lack of complaints "has been held to be sufficient to demonstrate lack of knowledge." *Prokop*, 754 N.W.2d at 715 (citing *Stiele*, 646 N.W.2d at 255 (holding that plaintiff could not satisfy the actual-knowledge factor where, among other things, the record demonstrated that there had been no previous complaints or indications that the complained-of condition may be dangerous)). The school district argues that, given the lack of prior injury reports, it is entitled to a finding that it did not have actual knowledge of the dangerous condition as a matter of law.

Kaloustian submitted evidence from her second-cousins, R.P. and C.P., who previously attended Robert Asp Elementary School and played on both the chinning bar and the turning bar nearly every day at recess and after school. R.P. stated that the chinning bar was loose and rotated inside its clamps. C.P. also stated that the chinning bar "was loose, it rattled, and other children and I could rotate it in the clamps that held it

8

in place." C.P. stated that she "told a female teacher on the playground that the high bar was loose and rotating and the teacher told me that she would tell the janitor to fix it."

The school district attempts to discredit this testimony on the ground that these accounts do not include the dates on which these observations occurred and it is unclear when C.P. reported the condition of the horizontal bars to the teacher. The school district characterizes these affidavits as "self-serving" because they were created six years after the date of injury and in response to the school district's motion for summary judgment. A self-serving affidavit is one that is created by a party in an attempt to create a fact issue for trial. *Mountain Peaks Fin. Servs., Inc. v. Roth-Steffen*, 778 N.W.2d 380, 388 (Minn. App. 2010). It is well-settled that a party may not avoid summary judgment through a self-serving affidavit contradicting earlier deposition testimony. *Geist-Miller v. Mitchell*, 783 N.W.2d 197, 203 (Minn. App. 2010). Here, however, the affidavits were submitted by individuals who are not parties to the case and there is no contrary deposition testimony by those individuals.

The affidavits lend support to Kaloustian's argument that the school district was aware that the chinning bar rotated within its clamps, raising a genuine issue of material fact. On appeal from a summary-judgment motion, our function is limited to determining whether there are genuine issues of material fact and whether the district court erred in its application of the law. *Betlach v. Wayzata Condo.*, 281 N.W.2d 328, 330 (Minn. 1979). "We neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder." *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004); *see also Fontaine v. Steen*, 759 N.W.2d 672, 679 (Minn. App. 2009)

9

("It is not within the province of appellate courts to determine issues of fact on appeal."). There is sufficient evidence in the record to create a question of material fact regarding whether the actual-knowledge requirement is satisfied.

**B.**

The school district urges this court to determine as a matter of law that recreational equipment cannot be deemed an inherently dangerous condition likely to cause death or serious bodily harm. We recognize that "any artificial condition 'could be' likely to cause death or serious bodily harm under the right circumstances." *Johnson v. State*, 478 N.W.2d 769, 773 (Minn. App. 1991), *review denied* (Minn. Feb. 27, 1992). Thus, we look to whether the dangerous condition is "likely" to cause serious bodily harm, not whether serious bodily harm "might" actually occur. *Id.* Conditions that satisfy this requirement generally have "inherently dangerous propensities," such as high voltage electrical wire. *Stiele*, 646 N.W.2d at 255.

The school district claims that it maintained the playground equipment in good condition and had not received reports of previous injuries. In light of this background, the school district argues that the act of falling from playground equipment does not qualify as a dangerous condition within the meaning of Minnesota law. Nevertheless, there is caselaw suggesting that falling from a height may constitute a dangerous condition. *See, e.g.*, *Unzen v. City of Duluth*, 683 N.W.2d 875, 877-78 (Minn. App. 2004) (affirming denial of summary judgment on city's recreational-immunity defense in tort action following plaintiff's fall down a flight of stairs), *review denied* (Minn. Oct. 27, 2004).

10

Respondent argues that playground equipment is a common cause of serious bodily injury or death. The school district's director of property services was responsible for inspecting the elementary playground on a regular basis and received training in playground safety and playground inspections. This certification course included review of a playground safety inspectors manual. The training materials advised that the most common cause of playground fatalities is "falls," and, with respect to upper-body equipment such as chinning bars, cautioned that hand-gripping components must not "turn or rotate on their own axis." The certified playground inspectors who performed annual inspections of the Robert Asp Elementary School playground similarly testified that it is "common professional knowledge" that chinning bars "should not rotate."

The school district was aware that people could be injured by falling off the playground equipment. We are not prepared to hold that playground equipment does not present a dangerous condition as a matter of law. *See id.* at 881 ("Considering the potential injuries involved with falling down a flight of stairs, a staircase may clearly be an 'inherently dangerous' condition."). Accordingly, we conclude that the district court did not err in denying the school district's motion for summary judgment based on recreational immunity.

## II.

The school district argues that Kaloustian's negligence claim is barred by her primary assumption of the risk. The district court rejected this argument, identifying a genuine issue of material fact as to whether Kaloustian "had knowledge of the risk of the chinning bar breaking free and rotating when she decided to do a flip off of the bar and

11

whether she appreciated that risk." On appeal, we consider first whether the school district's assumption-of-risk defense is inextricably intertwined with the recreational-immunity issue and second, whether the district court erred in denying summary judgment on the school district's assertion that Kaloustian primarily assumed the risk of her injuries.

**A.**

Minnesota courts recognize the "collateral order doctrine" espoused by the United States Supreme Court which permits an interlocutory appeal from a district court order notwithstanding the absence of a final judgment on the merits. *Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 240 (Minn. 2002). For the doctrine to apply, the issue must

> (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.

*Id.*

An order denying summary judgment is immediately appealable where immunity is raised as a defense. *Id.* at 238. But while an interlocutory appeal is available to review an order denying summary judgment on the ground of governmental immunity, *Lishinski v. City of Duluth*, 634 N.W.2d 456, 461 (Minn. App. 2001), *review denied* (Minn. Jan. 15, 2002), an assumption-of-risk argument is not immediately appealable. *See* Minn. R. Civ. App. P. 103.03 (delineating when an appeal may be taken to the appellate court); *Masonick v. J.P. Homes, Inc.*, 494 N.W.2d 910, 913 (Minn. App. 1993) (holding interlocutory review of non-immunity defense to liability is not appropriate).

12

The United States Supreme Court recognized that federal precedent allows for review of additional issues if they are "inextricably intertwined" with the issues properly raised in the collateral-order appeal. *Aon Corp. v. Haskins*, 817 N.W.2d 737, 741 (Minn. App. 2012) (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51, 115 S. Ct. 1203, 1212 (1995)). An issue is "inextricably intertwined" only "when the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well," and "only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal." *Aon Corp.*, 817 N.W.2d at 742 (quoting and citing favorably to federal precedent).

We conclude that the school district's assumption-of-risk defense is inextricably intertwined with its recreational-immunity defense. Although the district court analyzed the two issues separately, it identified a general issue of material fact as to whether the school district had actual knowledge that the chinning bar could break free and harm Kaloustian, precluding dismissal on both issues. We have previously extended interlocutory review to a non-immunity issue "to serve the interests of justice and judicial economy." *Rasivong v. Lakewood Cmty. Coll.*, 504 N.W.2d 778, 783 (Minn. App. 1993) (considering duty-to-warn issue alongside discretionary-immunity issue on appeal from summary judgment), *review denied* (Minn. Oct. 19, 1993). The issues raised here are intertwined to such an extent that a review of both is appropriate.

**B.**

The school district affirmatively alleges that Kaloustian's own negligence contributed to her injuries. Minnesota law recognizes two types of assumption of the

13

risk: primary assumption of the risk, which acts as a complete bar to recovery, and secondary assumption of the risk, which is a form of contributory negligence apportioned under the comparative-negligence statute. *Schneider v. Erickson*, 654 N.W.2d 144, 148 (Minn. App. 2002). The district court analyzed the school district's motion under a primary-assumption-of-risk standard. This standard applies when a party "voluntarily enters into a relationship in which the plaintiff assumes well-known, incidental risks." *Id.* A defendant has no duty to protect a plaintiff against such risks, nor is the defendant negligent if the plaintiff suffers an injury as a result of an incidental risk. *Snilsberg v. Lake Washington Club*, 614 N.W.2d 738, 743 (Minn. App. 2000), *review denied* (Minn. Oct. 17, 2000). Primary assumption of risk is a limited doctrine typically applied in cases involving inherently dangerous sporting events. *Eischen v. Crystal Valley Coop.*, 835 N.W.2d 629, 635 (Minn. App. 2013), *review denied* (Oct. 15, 2013).

Before considering the primary-assumption-of-risk doctrine, a district court must first determine whether the defendant owed a duty to the plaintiff. *Id.* at 634. The district court considered this issue and concluded that the school district owed Kaloustian the duty of care that a private person would owe a trespasser. Next, the district court considered whether the assumption applied. "The application of primary assumption of the risk requires that a person who voluntarily takes the risk (1) knows of the risk, (2) appreciates the risk, and (3) has a chance to avoid the risk." *Grady v. Green Acres, Inc.*, 826 N.W.2d 547, 551 (Minn. App. 2013). The district court stated that, before it could analyze whether Kaloustian assumed the risk, it first had to be shown that the school district owed her a duty of care. The district court next determined that there were

14

general issues of material fact regarding (1) whether the school district knew of the risk of the chinning bar breaking free and rotating, and (2) whether Kaloustian appreciated that risk.

The school district challenges the district court's determination on appeal regarding whether Kaloustian appreciated the risk, arguing that it is a well-known danger that an individual may be injured by falling off of horizontal playground bars. The school district elicited testimony from Kaloustian that she had fallen from playground bars in the past, hitting her face and injuring her teeth. Kaloustian acknowledged that, although she had never fallen before while doing a back-flip, she had seen others fall and knew that it was a possibility that someone could fall and get hurt. The school district argues, that under these circumstances, this court can hold as a matter of law that Kaloustian assumed the risk of her injury.

The applicability of primary assumption of the risk is generally a question for the jury, although it may be decided by the district court as a matter of law "when reasonable people can draw only one conclusion from undisputed facts." *Id.* at 549-50. Generally, appellate courts are hesitant to determine primary assumption of risk as a matter of law. *See, e.g.*, *Lishinski*, 634 N.W.2d at 460-61 (affirming denial of summary judgment in wrongful-death action and finding that genuine issues of material fact remained regarding condition of park path where decedent sustained in-line skating injuries). In *Goodwin v. Legionville Sch. Safety Patrol Training Ctr., Inc.*, we recognized that, while there are a limited number of cases in which primary assumption of risk applies, "[t]here will be an even more limited number of cases in which the evidence is so clear and

undisputed as to present no fact issues for the jury to decide, and the actions of the claimant are such as to constitute primary assumption of risk as a matter of law."  422 N.W.2d 46, 50 (Minn. App. 1988) (affirming application of primary assumption of risk in case involving well-known risk of slipping and falling off of a roof while performing roofing repairs), *review denied* (Minn. June 23, 1988).

Kaloustian testified that, while she may have anticipated falling off of the playground equipment, she did not expect the chinning bar to rotate.  And although the chinning bar was solid during Kaloustian's first back-flip maneuver, she testified that it slipped during her second attempt.  A Moorhead fire department lieutenant visited the playground within a day or two following the accident and noticed that the chinning bar was loose and "spun around."  The following Monday, the school district's operations coordinator also noticed that the chinning bar was loose.  If the chinning bar had been securely fastened following her injury, we would likely hold that Kaloustian assumed the risk of her injury.  However, given Kaloustian's testimony that she felt the bar "give" underneath her during her second back-flip, coupled with the statements by the Moorhead fire lieutenant and the school district's operations coordinator that the chinning bar was loose following the accident, we find there is a genuine issue of material fact concerning whether Kaloustian assumed the risk of her injury, precluding summary judgment on the school district's assumption-of-risk defense.

**Affirmed.**

16