William JUSSILA, Appellant,

v.

UNITED STATES SNOWMOBILE ASSOCIATION, Respondent,

Baxter Lions Club, Respondent.

No. C6–96–1247.

Court of Appeals of Minnesota.

Dec. 10, 1996.

Review Denied Jan. 29, 1997.

■

Frederick L. Grunke, Frank J. Rajkowski, Rajkowski Hansmeier Ltd., St. Cloud, for Appellant.

Joel M. Muscoplat, Jeffrey J. Lindquist, Pustorino, Pederson, Tilton & Parrington, P.A., Minneapolis, for Respondent United States Snowmobile Association.

Eric J. Magnuson, Max C. Ramsey, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, for Respondent Baxter Lions Club.

Considered and decided by LANSING, P.J., and HUSPENI, and NORTON, JJ.

## OPINION

LANSING, Judge.

A spectator who was struck by a snowmobile at a racing event challenges the district court's summary judgment dismissal of his negligence claims against the sponsors and organizers of the event. We conclude that the doctrine of primary assumption of risk bars the spectator's claims, and we affirm.

## FACTS

William Jussila brought this action to recover for injuries that he sustained watching a snowmobile race when he was struck by a participant who drove off the racetrack. The United States Snowmobile Association (USSA) organized the racing event. The Baxter Lions Club was the event's sponsor.

The oval-shaped racetrack had turns at the north and south ends. A grandstand with bleachers was located west of the track, and a two-foot-high Cyclone fence with a steel barrier rail at its base ran between the grandstand and the track. The fence, separated from the grandstand by about five feet, stretched along the grandstand's length and slightly beyond. At the end of the Cyclone fence and guardrail, a pliable plastic orange fence extended north up to a turn on the northwest segment of the track, and south for approximately 150 feet. Hay bales, placed five to seven feet away from the

orange fence, separated it from the track. Snow partly filled the space between the hay and the orange fence.

Jussila attended the December 11, 1994 races as a spectator. He was a longtime recreational snowmobile rider and had attended snowmobile racing events at the Crow Wing County Fairgrounds as a spectator two or three prior winters. On December 11 he entered the facility through a gate at its south end. As he walked toward the north end of the arena, behind the grandstand, he noticed that the bleachers seemed almost full. He continued walking north beyond the grandstand and stopped when he reached a ten-foot-high snow pile near the northwest turn. He watched the races from the top of the pile for approximately two and one-half hours, leaving once during that period to buy some food.

While Jussila watched the races from the snow pile, two incidents occurred in two separate races in which snowmobiles left the track around the northern curves, causing spectators standing below Jussila to move quickly from their positions to avoid being hit. After one of these incidents, Jussila commented to a man next to him, "Where are we going to go if one comes up the snow bank or comes up the hill?"

Because of these incidents, and because Jussila found that the northern end of the track had become particularly cold and windy, he decided to leave the snow pile location. He moved to the south of the grandstand where two motor homes and a travel trailer were parked alongside the racetrack; the travel trailer was parked to the south of the motor homes. Jussila positioned himself briefly between the southernmost motor home and the travel trailer. When a person in the travel trailer asked him to move, Jussila began walking south, between the trailer and the track. There he was struck by a racing snowmobile that had left the track.

Jussila brought this action against the USSA and the Baxter Lions Club, alleging they were negligent in the manner in which they installed protective barriers around the racetrack and allowed spectators into some of the less protected areas. The district court granted summary judgment for the USSA and the Lions Club, concluding that the doctrine of primary assumption of risk barred Jussila's claims.

## ISSUE

Does the doctrine of primary assumption of risk, as a matter of law, bar the negligence claims of a spectator who was struck and injured by a snowmobile at a racing event while he was watching the event from a location other than a fence-protected seating area?

## ANALYSIS

■■■ The doctrine of primary assumption of risk relates to a defendant's legal duty to protect a plaintiff from a risk of harm. *Springrose v. Willmore*, 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971). A court may determine the applicability of the doctrine as a matter of law when reasonable people can draw only one conclusion from undisputed facts. *Andren v. White–Rodgers Co.*, 465 N.W.2d 102, 105 (Minn.App.1991) (citing *Schroeder v. Jesco, Inc.*, 296 Minn. 447, 451, 209 N.W.2d 414, 417 (1973)), *review denied* (Minn. Mar. 27, 1991); *see also Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985) ("Generally, the existence of a legal duty is an issue for the court to determine as a matter of law.").

■■ The doctrine of primary assumption of risk has been held to apply in cases involving patrons of "inherently dangerous" sporting events. *Springrose*, 292 Minn. at 24, 192 N.W.2d at 827. The duty owed to a spectator at these events is fulfilled by providing "a reasonable opportunity to view the participants from a safe area." *Grisim v. TapeMark Charity Pro–Am Golf Tournament*, 415 N.W.2d 874, 875 (Minn.1987). This duty may be fulfilled at a baseball game, for example, by providing protective screening "for the most dangerous part of the grandstand and for those who may be reasonably expected to desire protected seats." *Brisson v. Minneapolis Baseball & Athletic Ass'n*, 185 Minn. 507, 509, 240 N.W. 903, 904 (1932). At a hockey game, placing nets behind the goal area and constructing a wall protecting the

front rows around the rink may be sufficient. *Modec v. City of Eveleth,* 224 Minn. 556, 29 N.W.2d 453 (1947). At a golf tournament, the duty may be met by providing bleachers for spectators to sit behind the green. *Grisim,* 415 N.W.2d at 875.

The Minnesota Supreme Court has applied the doctrine of primary assumption of risk to baseball, hockey and golf, but no Minnesota appellate court has addressed whether snowmobile racing is also an inherently dangerous sporting event to which the doctrine should apply. We conclude that it is. Although recreational snowmobiling by riders driving at moderate speeds may not be inherently dangerous, a snowmobile takes on a more dangerous character when operated on a racetrack by competitors attempting to win races by attaining high speeds. The use of an oval racetrack adds another element of risk: participants must maneuver at high speeds around turns on the track. *See Morton v. California Sports Car Club,* 163 Cal.App.2d 685, 329 P.2d 967, 969 (1958) (observing in context of sports car racing that turns on racetrack are "the most dangerous places").

We further conclude that the district court properly applied the doctrine to relieve the USSA and the Lions Club from liability for Jussila's injuries. Generally, primary assumption of risk applies only when a plaintiff voluntarily assumes well-known, incidental risks. *Olson v. Hansen,* 299 Minn. 39, 44, 216 N.W.2d 124, 127 (1974). According to a statement of USSA president Jerold Korinek, snowmobiles racing on an oval track will leave the track with "some frequency." It is undisputed that, in his previous experiences as a snowmobile race spectator, Jussila himself had witnessed racers lose control on "numerous" occasions. In addition, within approximately two hours of the incident that resulted in his injuries, Jussila twice observed snowmobiles leave the racetrack around turns at the north end. Although Jussila subsequently moved to a different location, at no point did he attempt to watch the races from the protected grandstand area. Instead, when he was hit by the snowmobile he was moving in the opposite direction, toward a turn at the southwestern

curve of the track. Jussila's knowledge of the risk of injury from a snowmobile leaving the racetrack was sufficient for him to have primarily assumed that risk as a matter of law.

Finally, we disagree with Jussila's contention that the USSA and the Baxter Lions Club enlarged the risk, making the doctrine of primary assumption of risk inapplicable. In support of his argument, Jussila cites *Rusciano v. State Farm Mut. Auto. Ins.,* 445 N.W.2d 271 (Minn.App.1989), in which this court upheld a district court's exercise of discretion in deciding not to submit to the jury a question on primary assumption of risk. The injury in *Rusciano* occurred when the plaintiff stepped in front of an oncoming car in a game of "chicken." *Id.* at 272–73. But the evidence also indicated that after the plaintiff stepped in the path of the car, the driver accelerated and then struck the plaintiff. *Id.*

Jussila argues that the USSA and the Lions Club enlarged the risks of his injury by not providing greater protection for spectators to view the races while standing south of the grandstand. Specifically, Jussila contends that the USSA and the Lions Club should have secured a twenty-five-foot safety zone, installed an "Armco guardrail," and "piled up snow flush up against the hay bales" lining the track. But these alleged deficiencies are distinguishable from the enlargement of risk that was present in *Rusciano.* Unlike the driver's acceleration in that case, none of the claimed omissions of the USSA and the Lions Club presented Jussila with a new risk to which he had only limited time to react; all of the conditions that Jussila describes as enlargements of the risk existed before he decided to watch the races from the south of the grandstand. We conclude that these circumstances did not enlarge the risks that Jussila assumed by not sitting in the grandstand.

## DECISION

Because the Baxter Lions Club and the USSA provided a protected seating area for spectators at the snowmobile racing event, and because Jussila knew the risks of not sitting in the protected area, the district

court properly concluded as a matter of law that the doctrine of primary assumption of risk bars him from recovering for the injuries that he sustained.

**Affirmed.**