**Lorrie L. RINN, Appellant,**

v.

**MINNESOTA STATE AGRICULTURAL SOCIETY d/b/a the Minnesota State Fair, Board of Regents of the University of Minnesota, Respondents.**

No. C2–99–1972.

Court of Appeals of Minnesota.

June 6, 2000.

David W. Vanderhayden, Vanderhayden and Ruffalo, P.A., Rochester, for appellant.

Pierre N. Regnier, Joseph E. Flynn, Jardine, Logan & O'Brien, St. Paul, for respondent Minnesota State Fair.

Mark B. Rotenberg, General Counsel, Thomas James Schumacher, Associate General Counsel University of Minnesota, Minneapolis, for respondent University of Minnesota.

Considered and decided by AMUNDSON, Presiding Judge, G. BARRY ANDERSON, Judge, and FOLEY*, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant Lorrie L. Rinn slipped, fell, and fractured her elbow while attending a 4–H horse show at the Minnesota State Fair. She challenges the district court's grant of summary judgment to respondents Minnesota State Agricultural Society, d.b.a. Minnesota State Fair (State Fair) and the Board of Regents of the University of Minnesota (U of M). We find that the district court erred by determining that the puddle on the coliseum stairs that caused appellant's fall was open and obvious as a matter of law. But, because the passage of 30 minutes did not give respondents constructive notice of the puddle, we hold that the district court properly granted summary judgment and affirm.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

## FACTS

4–H is a national, community-based youth program administered in Minnesota by respondent U of M. Since 1970, 4–H has sponsored an annual state-wide horse show for competing 4–H youth at the Minnesota State Fair. Respondent State Fair is a public corporation as defined in Minn.Stat. § 37.01 (1998). The horse show, held in a coliseum on the fairgrounds, features over 80 events. Appellant is the mother of two children from Winona County who participated in the five-day 4–H horse show in 1996.

At approximately 10:00 p.m. on September 16, 1996, appellant and her daughter ascended the steps of the coliseum to view the show from the middle of section 16. Stairs run along both sides of the section. Appellant and her daughter watched the show for approximately half an hour and at about 10:30, they descended the same set of stairs to cheer for a competitor they knew. Appellant, by deposition testimony, explained what happened:

> Well, when I was ready to take my next step I saw [a puddle of liquid]. I mean, you didn't see it from a distance; but I watch every step I take, I walk very cautiously, carefully; and when I saw it there, I looked back and told [my daughter], I said "Be careful, there is something there." Your choice was either to walk through it or climb over seats to get over it. So I just took one step and I went down * * *.

Appellant testified that a liquid covered the entire step, she did not know what it was, and it was not there when she ascended the stairs half an hour earlier. No evidence suggested that others had walked through the puddle. Appellant fractured her elbow in the fall.

4–H volunteers and staff administered the show events. According to the licensing agreement between U of M and State Fair, State Fair, and not the 4–H staff and volunteers, provided janitorial services in the coliseum. State Fair completely cleaned, swept, and inspected the coliseum each night after the show, but did not disrupt the events by cleaning during the day. State Fair provided staff to assist 4–H workers during the show. If cleaning problems were brought to the attention of the State Fair staff, they were resolved on an "as needed" basis. There is no evidence that any 4–H or State Fair staff were notified or had knowledge of, or created, the puddle that caused appellant's fall.

The district court concluded that the puddle was open and obvious and that appellant saw and recognized the condition as dangerous. The district court further decided that appellant failed to present any genuine issue of material fact relating to how long the liquid had been on the steps, which was essential to establishing that respondents owed a duty to appellant under the constructive notice doctrine. These circumstances, the district court held, entitled respondents to judgment as a matter of law.

Appellant argues that the district court erred by determining that the puddle was an open and obvious dangerous condition as a matter of law and by determining that there were no genuine issues of material fact as to whether respondents had constructive notice of the puddle.

## ISSUES

I. Is the puddle an open and obvious dangerous condition as a matter of law?

II. Is there a genuine issue of material fact as to whether respondents had constructive notice of the puddle that caused appellant's fall?

## ANALYSIS

■ On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *See State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Although we view the evidence in the light most favorable to the nonmoving party, summary

judgment is appropriate against a party who fails to establish the existence of an element essential to its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A prima facie case of negligence requires evidence of: (1) a duty owed by the defendant; (2) a breach of that duty; (3) causation; and (4) injury. *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 157 (Minn. 1982). Whether a duty exists is a question of law, which we review de novo. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn. 1985).

### I.

 The district court determined that respondents were relieved from owing any duty to appellant because the puddle was an open and obvious dangerous condition. A property owner has a reasonable duty to protect persons from being injured by foreseeable dangerous conditions on the property, unless the risk of harm is "obvious." *Peterson v. W.T. Rawleigh Co.,* 274 Minn. 495, 497, 144 N.W.2d 555, 557–58 (1966). The district court reasoned that "not only was the [puddle] open and obvious, but [appellant] saw and recognized the condition as dangerous." We disagree with the district court's conclusion that the puddle in this case is the type of condition that belongs among those recognized as "obvious" as a matter of law.

 The test for obviousness is not whether the injured person actually saw the danger, but whether in fact it was visible. *Munoz v. Applebaum's Food Market, Inc.,* 293 Minn. 433, 434, 196 N.W.2d 921, 922 (1972). Thus, the key consideration is the nature of the condition, and not the injured party's perception. The nature of the puddle in this case differs significantly from the obvious conditions appellate courts have recognized as relieving a landowner from any duty. For example, conditions involving dangers so obvious that no warning was necessary include a low hanging branch, a lake, a steep hill, a large planter, and a 20–foot

square pool of water. *See Baber v. Dill,* 531 N.W.2d 493, 496 (Minn.1995) (citing cases). Moreover, there is a critical qualifier to the general rule: even if a danger is known and obvious, landowners may still be liable to an injured person if the landowner should anticipate the harm despite the injured person's knowledge or the obviousness of the condition. *Sutherland v. Barton,* 570 N.W.2d 1, 7 (1997).

The puddle here, which covered a step, was small in comparison to the other conditions that our case precedent has established as "obvious." This puddle might have been obvious to appellant as she carefully looked down while descending the coliseum stairs. The same puddle may have, however, easily gone completely unseen by a spectator who, for instance, descended the steps while keeping his or her attention on the activity in the show ring. Recognizing conditions such as the puddle in this case as "obvious" as a matter of law would extend the "open and obvious" defense to relatively obscure dangerous conditions, and, in turn, may allow knowing, careless landowners to escape responsibility for less-apparent dangerous conditions created by their negligent actions. Because this is not the law, we conclude that the district court erred. Respondents were not entitled to summary judgment on the basis that the puddle was an open and obvious dangerous condition.

### II.

 As a second ground for granting summary judgment to respondents, the district court found that there was no genuine issue of material fact as to whether respondents had constructive knowledge of the puddle. Appellant asserts that respondents had constructive knowledge of the puddle and thus owed her a duty to tend to the puddle in a more timely fashion. A property owner has a duty to use reasonable care to prevent persons from being injured by conditions on the property that represent foreseeable risk of injury. *Hanson v. Christensen,* 275 Minn.

204, 213, 145 N.W.2d 868, 874 (1966). But even when landowners owe persons a duty to keep and maintain their premises in a reasonably safe condition, they are not insurers of safety. *Wolvert v. Gustafson,* 275 Minn. 239, 241, 146 N.W.2d 172, 173 (1966). Unless the dangerous condition actually resulted from the direct actions of a landowner or his or her employees, a negligence theory of recovery is appropriate only where the landowner had actual or constructive knowledge of the dangerous condition. *Messner v. Red Owl Stores,* 238 Minn. 411, 413, 57 N.W.2d 659, 661 (1953). Appellant has the burden of proving constructive knowledge. *See id.* at 414, 57 N.W.2d at 662.

Constructive knowledge of a hazardous condition may be established through evidence that the condition was present for such a period of time so as to constitute constructive notice of the hazard. *Anderson v. St. Thomas More Newman Ctr.,* 287 Minn. 251, 253, 178 N.W.2d 242, 243–44 (1970). But speculation as to who caused the dangerous condition, or how long it existed, warrants judgment for the landowner. *See Bob Useldinger & Sons, Inc., v. Hangsleben,* 505 N.W.2d 323, 328 (Minn.1993) (affirming grant of summary judgment where nonmoving party engages in mere speculation and conjecture); *Messner,* 238 Minn. at 413–15, 57 N.W.2d at 661–62 (grant of judgment notwithstanding verdict proper where there was no direct evidence as to how a banana peel came to be on the floor, or how long it had been there).

Appellant did not present any evidence showing who made the puddle, what the liquid was, or that any U of M or State Fair staff had notice of it. She testified that the puddle was not on the step when she ascended the stairs at 10:00 p.m., but was there when she descended the same stairs at about 10:30 p.m. The puddle was on the step at most a half hour, but could have been made only moments before appellant's fall, since there is no evidence suggesting that others had walked through the puddle.

Even when viewed in the light most favorable to appellant, and assuming the puddle was made just after 10:00 p.m., 30 minutes was not sufficient time to give respondents constructive notice of the late-night puddle made in the coliseum stands during the horse show. *Cf. Otis v. First Nat'l Bank of Minneapolis,* 292 Minn. 497, 195 N.W.2d 432 (1972) (holding that plaintiff failed to show that the defendant had actual or constructive notice of a puddle of water that had accumulated on a bank floor on a rainy day, 20 minutes after the bank opened); *Saari v. S.S. Kresge Co.,* 257 Minn. 290, 293, 101 N.W.2d 427, 430 (Minn.1960) (holding that plaintiff failed to show that the defendant had constructive notice of gum on a stair where there was evidence that defendant had been diligent in keeping the premises clean and the source of the gum, and length of time the gum remained on the stair, were undetermined).

The district court correctly ordered summary judgment on the basis that respondents lacked constructive notice of the puddle. There are no genuine issues of material fact as to whether respondents had constructive notice of the puddle. Because respondents did not have actual or constructive notice of the dangerous condition, they owed appellant no duty as a matter of law, and we affirm on this basis.

**DECISION**

The district court correctly granted summary judgment on the ground that respondents did not have actual or constructive notice of the puddle that caused appellant's fall, even though the puddle was not "open and obvious" as a matter of law.

**Affirmed.**