Ryan T. GRADY, Appellant,

v.

GREEN ACRES, INC., Respondent.

No. A12–0885.

Court of Appeals of Minnesota.

Feb. 4, 2013.

Nathan H. Bjerke, TSR Injury Law, Bloomington, MN, for appellant.

Jeanette M. Bazis, Jenny Gassman-Pines, Greene Espel PLLP, Minneapolis, MN, for respondent.

Considered and decided by HOOTEN, Presiding Judge; CONNOLLY, Judge; and RODENBERG, Judge.

## OPINION

CONNOLLY, Judge.

Appellant brought this action against respondent, the owner and operator of the snow-tubing business where appellant was injured while snow tubing. The district

court granted summary judgment on the ground that primary assumption of the risk barred appellant's claim. Appellant challenges the grant of summary judgment. We affirm.

## FACTS

In December 2009, appellant Ryan Grady, then 18 and a high-school senior, went snow tubing with two friends, J.B. and N.G., at the business run by respondent Green Acres, Inc. Appellant had previously gone snow tubing at respondent's business when he was in elementary school; he had also gone snow tubing when in high school at another establishment.

Snow tubing is a sport similar to snowboarding and sledding: all three involve standing, sitting, or lying on an object to slide rapidly down a snow-covered hill. Appellant testified that he is an "experienced" snowboarder, having participated in that sport several times each winter for about eight years; he has also been sledding about 20 times.

Respondent's parking lot had a sign telling patrons that "**TUBE SLIDING CAN BE DANGEROUS**" AND "TUBERS ASSUME ALL RISKS AND TAKE FULL RESPONSIBILITY FOR ANY INJURIES OR LOST ARTICLES." An adult patron must wear a ticket stating that he or she "is VOLUNTARILY PARTICIPATING in this activity, acknowledges that snow tubing is a POTENTIALLY DANGEROUS activity, and agrees to ASSUME ALL RISK of bodily injury, death, and/or property damage sustained ... including being struck by other tubers, tubes, or patrons." Patrons must also sign a release saying "I ... agree to hold harmless, release and discharge [respondent] ... of and from all claims, demands, causes of action and legal liability, whether the same be known or unknown, anticipat-ed or unanticipated, due to [respondent's] ... ordinary negligence."

Appellant and his friends went down the smaller of respondent's two hills, the family hill, which widens at the bottom into a large run-out area. They ascended the hill with the tow rope, then took running starts and jumped headfirst on their tubes, riding face down. J.B. went into the run-off area, then walked to the tow rope to go up the hill again. N.G. realized he was on track to collide with one of respondent's employees who was operating the tow rope; to avoid a collision, he put down his hands and feet and stopped the tube. He then followed J.B. to the tow rope.

Soon afterwards, respondent stopped all tubing and the tow rope because of an accident. J.B. and N.G. walked back down the hill and learned that appellant was the accident victim. Neither of them saw appellant's accident; appellant has no memory of the accident; and none of respondent's employees saw the accident. Appellant alleges that he struck another tuber, who was walking at the time.

## ISSUE

Does primary assumption of the risk apply to preclude liability for injuries resulting from the dangers inherent in snow tubing?

## ANALYSIS

■ This court reviews a summary judgment decision de novo, determining whether the district court properly applied the law and whether any genuine issues of material fact would preclude summary judgment. *Riverview Muir Doran, LLC v. JADT Dev. Co., LLC,* 790 N.W.2d 167, 170 (Minn.2010). "[T]he applicability of primary assumption of the risk may be decided by the court as a matter of law when reasonable people can draw only one conclusion from undisputed facts.... An

appellate court reviews that decision de novo." *Peterson ex rel. Peterson v. Donahue,* 733 N.W.2d 790, 791–92 (Minn.App. 2007) (quotation and citation omitted), *review denied* (Minn. Aug. 21, 2007).

Primary assumption of the risk has been applied in "cases involving patrons of inherently dangerous sporting events." *Wagner v. Obert Enters.,* 396 N.W.2d 223, 226 (Minn.1986) (rollerskating); *see also Grisim v. TapeMark Charity Pro–Am Golf Tournament,* 415 N.W.2d 874, 876 (Minn.1987) (golf); *Moe v. Steenberg,* 275 Minn. 448, 450–51, 147 N.W.2d 587, 589 (1966) (ice skating); *Peterson,* 733 N.W.2d at 793 (skiing); *Schneider ex rel. Schneider v. Erickson,* 654 N.W.2d 144, 151–52 (Minn.App.2002) (paintball); *Snilsberg v. Lake Wash. Club,* 614 N.W.2d 738, 746–47 (Minn.App.2000) (diving), *review denied* (Minn. Oct. 17, 2000); *Jussila v. U.S. Snowmobile Ass'n,* 556 N.W.2d 234, 237–38 (Minn.App.1996) (snowmobile racing), *review denied* (Minn. Jan. 29, 1997); *Swagger v. City of Crystal,* 379 N.W.2d 183, 184–85 (Minn.App.1985) (softball), *review denied* (Minn. Feb. 19, 1986).

> Primary assumption of the risk arises when parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks. The defendant has no duty to protect the plaintiff from the well-known, incidental risks assumed, and the defendant is not negligent if any injury to the plaintiff arises from an incidental risk. . . .
>
> In primary assumption of the risk, by voluntarily entering into a situation where the defendant's negligence is obvious, by his conduct, the plaintiff consents to the defendant's negligence and agrees to undertake to look out for himself and relieve the defendant of the duty. . . . [T]he applicability of primary assumption of the risk may be decided by the court as a matter of law when reasonable people can draw only one conclusion from undisputed facts.
>
>  . . . .
>
> The first step in determining whether primary assumption of the risk applies is to determine whether the defendant owed a duty to the plaintiff.

*Snilsberg,* 614 N.W.2d at 743–44 (citations and quotations omitted).

Thus, the first question we ask is whether respondent owed a duty to appellant. Appellant implies that respondent had and breached a duty to provide lanes on the hill, employ attendants at the top and bottom of the hill who would indicate when it was safe for tubers to come down, and install a protected walkway from the run-off area at the bottom of the hill to the tow rope. But appellant offers no evidence (other than his own opinion) that these acts would have reduced the risks inherent in snow tubing or the particular risk that he alleges caused his own injury, namely collision with another tuber.[1]

Even if appellant did collide with another tuber, as he asserts in his complaint, such a collision between participants is a "well-known, incidental risk" of snow tubing, in which, as in skiing, participants travel down slippery hills at high speed with limited ability to stop or turn. *See*

1. We note that appellant answered, "No" when asked if he remembered what he ran into, where he was on the hill when the collision happened, or if he saw anyone or anything before the collision; whether he remembered anything about the collision, and whether he had any memory of the accident. We nevertheless assume that appellant's allegation in his complaint that he collided with another tuber who was walking at the bottom of the hill is true. *See Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) ("On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted.").

*Peterson,* 733 N.W.2d at 793; *see also Wagner,* 396 N.W.2d at 226 (holding that a skater "assumes the ordinary, necessary, obvious risks that are incidental to ... skating, including the risk of falling and colliding with other skaters due to lack of skill or clumsiness").[2]

"Special relationships giving rise to a duty to warn have been found between injured persons and possessors of land who hold it open to the public...." *Snilsberg,* 614 N.W.2d at 744 (concluding that, because the venue of the diving accident was not open to the public, no special relationship imposed a duty to warn). Assuming that respondent did have a duty to warn, respondent met that duty: the sign in the parking lot, the statement on the ticket, and the release appellant signed all contained warnings of the dangers of snow tubing on respondent's land.

■■ "The application of primary assumption of the risk requires that a person who voluntarily takes the risk (1) knows of the risk, (2) appreciates the risk, and (3) has a chance to avoid the risk." *Peterson,* 733 N.W.2d at 792. "Application of the doctrine requires actual, rather than constructive, knowledge." *Snilsberg,* 614 N.W.2d at 746. Actual knowledge of a sport's risks may be inferred from experience in the sport. *See, e.g., id.*

> The record establishes that Snilsberg was an experienced swimmer and diver. The danger of diving into a dark lake from a short dock is obvious to anyone with her experience. Her own testimony established that she knew and appreciated the risk of diving into shallow water. Diving into dark water of indet-

erminable depth is equally dangerous.... Thus, the record supports the district court's finding that Snilsberg was familiar with the water and should have appreciated the risk in the specific area where the accident occurred.

> Her general knowledge as an experienced swimmer and diver, and her specific knowledge of the shallow water around the ... dock, establish that Snilsberg had actual knowledge of the danger of diving into the lake from that dock. In addition, Snilsberg had ample opportunity to avoid the risk by declining to go swimming or by wading or jumping into the water. She chose voluntarily to expose herself to the risk and the district court correctly held that primary assumption of the risk applies.

*Id.*

Although appellant argues that he "did not appreciate the risk of being seriously injured by a collision with a tuber in the run-out area at the bottom of [respondent's] hill," his situation is analogous to that in *Snilsberg.* Appellant wore a ticket saying that he "ASSUME[D] ALL RISK of bodily injury ... sustained ... including being struck by other tubers, tubes, or patrons." His testimony also reflects his knowledge and appreciation of the risk. He answered "Yes" when asked if, on his previous visit to respondent's business, he "saw a person on a tube run into a little girl who was walking at the bottom of the hill" and when asked if he "knew there was a possibility that someone who was walking back [to the tow rope] on the bottom of the hill could get hit by someone who was in a tube...."

---

2. Appellant relies on *Daly v. McFarland,* 812 N.W.2d 113, 120 (Minn.2012) (holding that collision between participants is not an inherent risk of snowmobiling because a snowmobile, "carefully operated, is no more hazardous than an automobile, train, or taxi"). But

*Daly* is distinguishable: the driver of a snowmobile has the equipment and the ability to stop and turn quickly; a snow tuber going rapidly down a hill, like a skier or a sledder, has neither.

Appellant also testified about his activity in similar sports. When asked why, when sledding, he waited until no one was in the way before going down the hill, he answered, "So I can make it all the way down and *I don't run into anybody.*" (Emphasis added.) When asked how one could get hurt while snowboarding, he answered, "You could fall, *run into* a tree or a building or *someone else.*" (Emphasis added.) Thus, the record here supports the district court's conclusion that appellant knew snow tubing entailed the risk of collision with another person and appreciated that risk, just as Snilsberg knew diving into water of an unknown depth entailed the risk of hitting the lake bottom. *See id.*

Like Snilsberg, who could have avoided the risk by not swimming at all or not diving into the water, appellant had the chance to avoid the risk by not going down the hill. The district court concluded that his "choice to slide down an icy snow hill face-first evinces not only a willingness to relieve others of their obligation for [his] safety, but to leave [his] safety largely to chance." The record supports the district court's conclusion that appellant knew the risk, appreciated it, and had a chance to avoid it.[3]

■ Finally, appellant argues that respondent enlarged the risk of snow tubing by not using lanes, not having a designated walkway back to the tow rope, not having employees at the top of the hill telling tubers when to leave, and not having sufficient employees to pay attention to tubers at the bottom of the hill. "Primary assumption of the risk may not apply if the defendant enlarged the risk to the plaintiff." *Schneider,* 654 N.W.2d at 152. "[I]n order for there to be an enlargement of the risk there must be a 'new risk' and 'only a limited time to react.'" *Id.* (quoting *Jussila,* 556 N.W.2d at 237). *Schneider* found no enlargement of the risks to a paintball player who removed his goggles and was accidentally hit in the eye with a paintball. *Id.*

*Jussila* found no enlargement of the risk to a spectator at a snowmobile race who walked near the track and was hit by a snowmobile that accidentally left the track. *Jussila,* 556 N.W.2d at 237.

[N]one of the claimed omissions of [the organizers and sponsors of the race] presented [the plaintiff] with a new risk to which he had only limited time to react; all of the conditions that [he] describes as enlargements of the risk existed before he decided to watch the races from the south of the grandstand.

*Id.* In *Jussila,* as here, the conditions alleged to be enlargements of the risk were not positive acts but omissions of the defendant. *See id.* (alleging that failures to secure a 25–foot safety area, to install a guardrail, and to pile snow against hay bales along the track were enlargements of spectator's risk). Here, as the district court noted, all the conditions of which appellant complains were apparent when he stood at the top of the hill and before he decided to tube down it; none of them was added by respondent after appellant left the top of the hill.[4]

---

3. For now, we expressly limit our holding in this case to *adult* patrons. We recognize that we have applied the doctrine of primary assumption of the risk to children. *See, e.g., Peterson,* 733 N.W.2d at 790–91 (risk assumed by experienced 11–year–old who was in his fourth year on a ski race team).

4. Appellant argues that *Jussila* "create[s] confusion and inconsistency in Minnesota law" because no supreme court case has addressed the enlargement doctrine it applies. But the supreme court denied review of *Jussila,* and *Schneider* subsequently relied on *Jussila* and applied the doctrine.

## DECISION

 Because primary assumption of the risk applies to snow tubing, appellant's injury resulted from a risk inherent in snow tubing, and respondent did not enlarge that risk, respondent is not liable for appellant's injury and was properly granted summary judgment.

**Affirmed.**