*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0194**

Donya L. Dawson,
Appellant,

vs.

Afton Alps Recreation Area,
Respondent.

**Filed September 22, 2014
Affirmed
Willis, Judge\***

Washington County District Court
File No. 82-CV-13-224

James W. Balmer, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, Minnesota (for appellant)

Jeffrey J. Lindquist, Pustorino, Tilton, Parrington & Lindquist, PLLC, Minneapolis, Minnesota (for respondent)

        Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Willis, Judge.

_____

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WILLIS**, Judge

Appellant sustained injuries from colliding with a fence while snowtubing and brought a negligence action against the owner and operator of the snowtubing business. The district court entered summary judgment in favor of the owner, concluding that the doctrine of primary assumption of the risk barred appellant's claim. We affirm.

## FACTS

In January 2012, appellant Donya Dawson went snowtubing at respondent Afton Alps Recreation Area with a group of friends. Dawson, who was 41 years old, had snowtubed at least once in the preceding two years. A friend of Dawson's signed a release in order to get Dawson's ticket; Dawson affixed the ticket to her jacket. The ticket contained the following language:

> The purchaser or user of this ticket agrees and understands that skiing, snowboarding, and tubing can be hazardous. Trail conditions vary constantly because of weather changes and individual use. Ice, variations in terrain, moguls, forest growth, rocks and debris, lift towers and other obstacles and hazards, including other skiers, snowboarders and tubers may exist throughout the area. Be aware that snowmaking and snowgrooming may be in progress at any time. Always stay in control.
>
> In using the ticket and skiing, snowboarding or tubing at the area, such dangers are recognized and accepted whether they are marked or unmarked. Ski, snowboard and tube on slopes of your ability and read trail maps.
>
> The user realizes that falls and collisions do occur and injuries may result and therefore assumes the burdens of skiing, snowboarding and tubing under control at all times.

. . . .

> The user of this ticket assumes all risk of personal injury or loss or damage to property.

While Dawson did not read the fine print of the ticket, she testified that she had read similar language on a ticket when she snowtubed previously.

Standing at the top of the hill, Dawson saw that there was a fence directly behind a pillow barrier at the foot of the hill. The pillow barrier was composed of several large, foam-filled pads that were tied together with thick rope and that in turn were tied to the fence. Dawson testified that the conditions on the hill were icy and that she had no control over the speed or direction of travel of her tube during the descent. On her first run, Dawson snowtubed down the hill with five of her friends. All six linked their tubes together. When Dawson reached the bottom of the hill, she "flipped upside down" as she hit the pillow barrier. An Afton Alps employee told her that the facility allowed only two snowtubers to go down the hill together because linking tubes increases the speed of descent. Dawson testified that she continued to snowtube down the hill linked with a friend's tube, and she hit the pillow barrier "very hard" each time. After snowtubing for approximately an hour and a half, Dawson and her boyfriend snowtubed down the hill with their tubes linked together. At the end of the run, Dawson flipped off her tube and her body hit the fence, injuring her left leg.

Dawson asserts that her bodily injury was directly and proximately caused by Afton Alps's negligence. The district court granted Afton Alps's motion for summary

judgment, concluding that Dawson's claims were barred by the doctrine of primary assumption of the risk. This appeal follows.

## D E C I S I O N

"On appeal from summary judgment, we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504-05 (Minn. 2011). "[T]he applicability of primary assumption of the risk may be decided by the court as a matter of law when reasonable people can draw only one conclusion from undisputed facts. . . . [A]n appellate court reviews that decision de novo." *Grady v. Green Acres, Inc.*, 826 N.W.2d 547, 549-50 (Minn. App. 2013) (alterations in original).

Primary assumption of the risk acts as a complete bar to a plaintiff's recovery. *Armstrong v. Mailand*, 284 N.W.2d 343, 348 (Minn. 1979). Minnesota courts have applied primary assumption of the risk to cases involving participants in inherently dangerous sporting activities. *See Wagner v. Obert Enters.*, 396 N.W.2d 223, 226 (Minn. 1986) (rollerskating); *see also Grisim v TapeMark Charity Pro-Am Golf Tournament*, 415 N.W.2d 874, 876 (Minn. 1987) (golf); *Moe v. Steenberg*, 275 Minn. 448, 450-51, 147 N.W.2d 587, 589 (1966) (ice skating); *Peterson ex rel. Peterson v. Donahue*, 733 N.W.2d 790, 793 (Minn. App. 2007) (skiing), *review denied* (Minn. Aug. 21, 2007); *Schneider ex rel. Schneider v. Erickson*, 654 N.W.2d 144, 152 (Minn. App. 2002) (paintball); *Snilsberg v. Lake Wash. Club*, 614 N.W.2d 738, 746-47 (Minn. App. 2000) (diving), *review denied* (Minn. Oct. 17, 2000); *Jussila v. U.S. Snowmobile Ass'n*, 556 N.W.2d 234, 237 (Minn. App. 1996), (snowmobile racing), *review denied* (Minn. Jan. 29,

4

1997); *Swagger v. City of Crystal*, 379 N.W.2d 183, 184-85 (Minn. App. 1985) (softball), *review denied* (Minn. Feb. 19, 1986). In *Grady*, this court recently held that primary assumption of the risk applies to adult snowtubers because it is an inherently dangerous sport. 826 N.W.2d at 552.

Here, the doctrine of primary assumption of the risk relates to Afton Alps's legal duty to protect Dawson, a snowtuber, from the risk of harm.

> Primary assumption of the risk arises when parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks. The defendant has no duty to protect the plaintiff from the well-known, incidental risks assumed, and the defendant is not negligent if any injury to the plaintiff arises from an incidental risk . . . .
>
> In primary assumption of the risk, by voluntarily entering into a situation where the defendant's negligence is obvious, by his conduct, the plaintiff consents to the defendant's negligence and agrees to undertake to look out for himself and relieve the defendant of the duty.

*Id.* at 550.

"The application of primary assumption of the risk requires that a person who voluntarily takes the risk (1) knows of the risk, (2) appreciates the risk, and (3) has a chance to avoid the risk." *Id.* at 551 (citing *Peterson*, 733 N.W.2d at 792). "Application of the doctrine requires actual, rather than constructive, knowledge." *Snilsberg*, 614 N.W.2d at 746.

## A. Duty of Care

"The first step in determining whether primary assumption of the risk applies is to determine whether the defendant owed a duty to the plaintiff." *Grady*, 826 N.W.2d at

550. Afton Alps acknowledges that it owed Dawson the duty of reasonable care. *See Phillips v. Wild Mountain Sports, Inc.*, 439 N.W.2d 58, 59 (Minn. App. 1989) (holding that "[a] private person operating a place of public amusement is under an affirmative duty to make it reasonably safe for his patrons"). "But the landowner's duty to entrants does not include situations where the risk of harm is obvious or known to the plaintiff, unless the landowner should anticipate the harm despite the obviousness of the risk." *Snilsberg*, 614 N.W.2d at 744.

Dawson argues that Afton Alps breached its duty because it failed to warn her that she could be injured by colliding with the fence, and Afton Alps should have either removed or properly cushioned the fence. But Dawson offers no evidence other than her own argument that such measures would have lessened the inherent risks associated with snowtubing. *See Grady*, 826 N.W.2d at 550 (dismissing appellant's assertion that respondent was negligent in reducing risk of collision with another snowtuber when it failed to provide numerous safety measures on the course).

A well-known, incidental risk of snowtubing is the possibility of colliding with a fixed object. Snowtubing is a sport, like skiing, in which "participants travel down slippery hills at high speed with limited ability to stop or turn." *Id.* Even if Afton Alps had a duty to warn, it met that duty when it informed Dawson of the risk of possibly colliding into a fixed object, such as the fence. Dawson wore a release ticket on her jacket that stated that snowtubing can be hazardous, and by using the ticket to snowtube at Afton Alps, she recognized and accepted all dangers "whether they are marked or unmarked" and "assume[d] the burden" of snowtubing "under control at all times."

**B.** **Knowledge and appreciation of the risk**

Actual knowledge of a sport's risks may be inferred from experience in the sport. *Grady*, 826 N.W.2d at 551; *see also Snilsberg*, 614 N.W.2d at 746 (concluding that appellant's actual knowledge of the danger of diving into the lake from the dock was established by her general knowledge as an experienced swimmer and diver and specific knowledge of the shallow water at the dock).

Dawson argues that she did not have actual knowledge that she could suffer severe harm from colliding with the fence while snowtubing. But the record supports the district court's determination that Dawson had such actual knowledge. Dawson testified that she had general knowledge of snowtubing because she had done it at least once before. Dawson also had specific knowledge that she could collide with the fence while snowtubing—she saw that the fence was located directly behind the pillow barrier at the foot of the hill. Dawson knew of the icy conditions on the hill that evening and that she was unable to control her tube as it went down the hill. An Afton Alps employee told Dawson after her first run that linking tubes increases the speed of descent. Despite her knowledge of these risks, she continued to snowtube down the hill.

The record also supports the district court's conclusion that Dawson appreciated the risk of being injured by colliding with the fence. Dawson wore a ticket on her jacket stating that she acknowledged that "obstacles and hazards . . . may exist throughout the area" and "collisions do occur and injuries may result," and that she "recognized and accepted those dangers" and "assume[d] all risk of personal injury."

7

Although Dawson insisted that she was unaware that she could be injured by colliding with the fence, she testified that it was possible that she could collide with other persons or objects while snowtubing and that snowtubing is a sport that cannot be made completely safe. The record supports the district court's conclusion that Dawson knew and appreciated the risk of a collision with the fence.

The district court also properly concluded that Dawson had a chance to avoid the risk. *See Grady*, 826 N.W.2d at 552 (concluding appellant had the chance to avoid the risk of colliding with another snowtuber by not going down the hill). Dawson could have avoided the risk by not snowtubing that evening. The district court noted that when Dawson stood at the top of the hill, "she could see and appreciate the conditions then existing" and that she "was aware from her previous trips down the hill that the hill was icy and that she would in all likelihood run into the [pillow barrier], and possibly the fence, at the end of her run." The record supports the district court's conclusion.

## C. Expert testimony

Dawson argues that primary assumption of the risk is inapplicable here because her liability expert testified that the fence was not a well-known risk incidental to snowtubing. But colliding with a fixed object is a well-known risk of snowtubing, and here the fence was an obvious fixed object. No genuine issue for trial exists when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quoting *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)). No genuine issue of fact exists here because the evidence is conclusive, and there is no fact

8

issue for a jury to decide. *See Snilsberg*, 614 N.W.2d at 744 (holding that applicability of primary assumption of the risk is "[g]enerally a question for the jury" but that it "may be decided as a matter of law" when the evidence is conclusive).

The record supports the district court's determination that Dawson's injuries resulted from the inherent risks of snowtubing, and it did not err by granting Afton Alps's motion for summary judgment.

**Affirmed.**