*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1846**

Scott B. Lindholm,
Appellant,

vs.

Carleton College,
defendant and third party plaintiff,
Respondent,

vs.

Metropolitan Mechanical Contractors,
third party defendant,
Respondent.

**Filed June 27, 2016
Affirmed
Stauber, Judge**

Rice County District Court
File No. 66-CV-14-836

George G. Eck, Michael D. Stinson, Dorsey & Whitney, L.L.P., Minneapolis, Minnesota
(for appellant)

Andrew L. Marshall, J. Scott Andresen, Bassford Remele, P.A., Minneapolis, Minnesota
(for respondent Carleton College)

Michael Kreidler, Stich, Angell, Kreidler, Unke & Scattergood, P.A., Minneapolis,
Minnesota (for respondent Metropolitan Mechanical Contractors)

        Considered and decided by Johnson, Presiding Judge; Stauber, Judge; and Kirk,

Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant-worker challenges summary judgment in favor of respondent-landowner on appellant's negligence claims. Because the landowner had no reason to anticipate that appellant would perform his job without taking proper safety precautions, the landowner did not owe a duty of care to appellant when appellant was injured on the job. In addition, the district court did not abuse its discretion either by refusing to consider an untimely and self-serving affidavit or by denying motions to compel discovery and amend the complaint. We therefore affirm.

## FACTS

On March 30, 2012, appellant Scott B. Lindholm was seriously injured when he broke through the attic of the Laird Stadium at respondent Carleton College in Northfield and fell 20 feet to the floor below. Lindholm had gained entry to the attic through a ceiling hatch by climbing an eight-foot ladder, and he intended to traverse a catwalk made from three 2x6 inch boards that ran across the ceiling joists; the catwalk was about 20.5 inches wide. In the attic, 4x8 foot sheets of plywood attached to the joists served as ceiling panels. The catwalk led directly to an air handling unit (AHU) on which appellant intended to perform maintenance work. After the accident, appellant did not remember what caused his fall or even being in the attic.

At the time of his injury, appellant had over 35 years of experience as a sheet-metal worker. His employer of 22 or 23 years, respondent Metropolitan Mechanical Contractors, Inc. (MMC), had entered into a contract with Carleton in 2011 to provide

2

heating, ventilation, and air conditioning (HVAC) and other mechanical services to Carleton on an as-needed basis. Appellant held the position of field foreman for MMC and generally worked independently on special projects. MMC had provided HVAC services to Carleton for about fifteen years, other than a one-year period in 2010. Appellant had worked in nearly all of Carleton's buildings during that time, including the Laird Stadium attic.

Appellant's training and work history included a two-year training program at Dunwoody Institute, three years of night school at Dunwoody, and sheet-metal work at both Franklin Sheet Metal (which included residential attic-space work) and General Sheet Metal. In 1989 or 1990, appellant began working for MMC.

In 2009, before appellant's accident, another worker put some weight on a ceiling panel in the attic of the Laird Stadium, and the panel fell to the ground.

Appellant had experience using various types of fall protection, including a "body harness with a lanyard or retractable," which MMC provided to him. As a foreman, he was responsible to decide for himself when this safety equipment was needed at his jobs, and appellant agreed that at MMC safety was a priority, so that if a worker felt he needed fall protection, he could use it even if it was not required by the company.

MMC's contract with Carleton College includes a provision that makes MMC responsible for satisfying Occupational Safety and Health Act (OSHA) requirements. The contract provides that MMC "shall be solely responsible to comply with all federal, state, county, city, and municipal laws, orders, ordinances, rules and regulations in providing any Services to The College, including without limitation, all applicable

3

requirements of [OSHA] and all state and local laws and regulations related to safety." The contract also requires MMC to provide all equipment and supplies to perform work at Carleton, and requires all equipment to "meet OSHA and any other applicable safety requirements."

An MMC investigation determined that appellant should have been wearing a body harness at the time of his fall. At his deposition, appellant stated that he "would never walk on the ceiling panel" without assessing whether it could bear human weight, and that he was aware that he was between 8 and 20 feet above the ground when he was in the Laird Stadium attic. But when asked if he viewed the attic as hazardous, appellant said, "Absolutely not."

The safety director for MMC, Daniel Pothen, testified at his deposition that the risk posed by working in the attic space at the Laird Stadium should have been apparent to appellant, that appellant "created the hazard of falling to the floor 20 feet below by not wearing his fall protection," and that appellant's failure to wear proper fall protection violated MMC's safety standards, which required employees to wear fall protection if they worked at a height of greater than six feet. Appellant acknowledged this safety rule at his deposition.

Appellant brought a negligence action against Carleton, arguing that Carlton had breached its duty to exercise reasonable care as a landowner and in the maintenance, operation, and inspection of property improvements, and failed to inspect its property for dangerous conditions, repair them, or warn him of them. Carleton opposed the negligence claims, arguing that the danger was open and obvious and that appellant had

4

assumed the risk of his injuries. Carleton also filed a third-party complaint seeking indemnification from MMC based on their service contract. Carleton then moved for summary judgment against appellant.

Following a hearing, the district court granted summary judgment to Carleton, ruling that Carleton "did not owe [appellant] a duty of care because the hazard was open and obvious." The district court denied Carleton's motion for summary judgment based on the theory of primary assumption of risk. Appellant filed a notice of appeal, challenging the summary-judgment ruling as well as the district court's denial of his discovery motions and refusal to consider his affidavit. Carleton filed a notice of related appeal, challenging the ruling that appellant had offered sufficient facts to present a fact question as to whether appellant assumed primary risk for the accident. We affirm.

## D E C I S I O N

### I. Summary judgment on negligence claim.

Appellant asserts that the district court erred by granting summary judgment to Carleton on appellant's negligence claim. This court "review[s] a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). This court views the evidence in the light most favorable to the nonmoving party. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).

5

A negligence cause of action consists of four elements: "(1) existence of a duty of care; (2) breach of that duty; (3) proximate causation; and (4) injury." *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007). "The existence of a duty of care is a threshold question because a defendant cannot breach a nonexistent duty." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). Whether a duty exists is a legal question subject to de novo review. *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 581 (Minn. 2012). "Summary judgment is appropriate when the record lacks proof of any of the four elements [of a negligence claim]." *Kellogg v. Finnegan*, 823 N.W.2d 454, 458 (Minn. App. 2012).

Appellant argues that the district court erred by granting summary judgment on his negligence claim because Carleton owed a legal duty to him, as the fall hazard in the Laird Stadium attic was not obvious and Carleton could anticipate that he would not use fall protection. Minnesota has adopted the Restatement of Torts approach for determining when a landowner owes a duty of care to property invitees:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A(1) (1965); *see Baber v. Dill*, 531 N.W.2d 493, 496 (Minn. 1995) (acknowledging Minnesota's long-standing application of the restatement standard). "'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts § 343A

6

cmt. b (1965). A landowner "has a duty to warn if harm to an invitee should be anticipated despite the obviousness of the danger," unless "the anticipated harm involves dangers so obvious that no warning is necessary." *Baber*, 531 N.W.2d at 496. In *Baber*, the supreme court cited cases involving dangers such as low-hanging branches, the steepness of a hill, the existence of a large planter, the existence of a lake, and the dimension of a pool of water as being so obvious that the landowner was not required to warn an invitee about them. *Id.* "The rationale underlying [the] rule is that no one needs notice of what he knows or reasonably may be expected to know." *Id.* (quotation omitted). "Whether a danger is obvious is an objective question rendering irrelevant whether the injured invitee actually noticed it." *Renswick v. Wenzel*, 819 N.W.2d 198, 207 (Minn. App. 2012), *review denied* (Minn. Oct. 16, 2012). "Generally, whether a condition presents a known or obvious danger is a question of fact," to be decided by a jury, as is the question of whether the landowner should anticipate the danger, despite the danger being known or obvious. *Olmanson v. LeSueur Cnty.*, 693 N.W.2d 876, 881 (Minn. 2005).

Viewing the alleged facts in appellant's favor, appellant has not offered material facts to establish that Carleton owed appellant a duty of care. The risk of falling from height is a risk appreciated by all humans, and the risk of falling from an attic by stepping between floor joists onto a surface that is not intended to bear weight is a well-known risk to anyone who works in attics. The condition of the attic itself was obviously hazardous: the attic was at least eight feet off the floor with a catwalk made from boards leading from its entrance to the AHU; no railings were installed along the crosswalk; there were

7

open joists throughout the attic; and mere plywood panels were attached to the bottoms of the joists.

Appellant testified in his deposition that he was aware that he was between eight and 20 feet above ground after he climbed the ladder to enter the attic. He further testified that he would not have stepped off the catwalk until he determined that the plywood panels could bear human weight. He also acknowledged awareness of a company policy that required him to wear fall protection when he was more than six feet above ground. Although appellant denied believing that the attic presented a hazard to him, on the alleged facts, the risk would have been obvious to a reasonable person and objectively should have been obvious to him.

Appellant argues that the dangerous condition here is a relatively obscure one that is unlike the obviously dangerous conditions that were exempted from the property owner's duty of care in *Baber*. *See Rinn v. Minn. State Agric. Soc'y*, 611 N.W.2d 361, 364 (Minn. App. 2000) (reversing summary judgment to landowner on the basis that a small puddle was an obviously dangerous condition because it extended the landowner's "open and obvious defense" to a condition that was "relatively obscure"). But the condition in this case is most similar to the condition in *Hammerlind v. Clear Lake Star Factory Skydiver's Club*, 258 N.W.2d 590 (Minn. 1977). There, the supreme court recognized that the existence of a lake within a drop zone of a parachutist was an obvious danger that the parachutist should have anticipated, "given [the lake's] proximity to the drop zone and the danger of water generally to jumpers." *Id.* at 594. The dangerous

8

condition of the attic was not so obscure that Carleton should be held to owe appellant a duty of care for the obviously dangerous condition.

The rule that Carleton is not liable for known or obvious dangerous conditions does not apply if Carleton "should have anticipated the harm despite its known or obvious nature." *Louis v. Louis*, 636 N.W.2d 314, 319 (Minn. 2001); *see Sutherland v. Barton*, 570 N.W.2d 1, 7 Minn. (1997); Restatement (Second) of Torts § 343A cmt. f (1965) (recognizing "crucial qualifier" to the general rule of no duty of care if landowner anticipates dangerous condition when the landowner "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk").

The most apposite Minnesota case on this issue is *Sutherland*. There, the supreme court held as a matter of law that, for purposes of establishing a landowner's duty of care toward an electrician who was employed by a subcontractor to work on the landowner's property, the landowner should not have anticipated that the electrician "would proceed to encounter the danger of . . . live buss bars [electricity] without taking the necessary safety precautions." 570 N.W.2d at 7-8. The supreme court relied on the fact that, even though the subcontractor unsafely allowed the electrician to use a metal tape near live electricity, it was reasonable for the landowner to rely on the subcontractor to "take the necessary safety precautions and . . . require its employees to follow proper safety guidelines," and that "[m]ore importantly, [the electrician] had expertise as an electrician," and "was trained to work near energized electrical wires." *Id.*

In the same vein, MMC was hired to handle Carleton's HVAC work and held the contractual duty to be responsible for its employees' safety, and appellant had 35 years of experience in the sheet-metal industry. Thus, as in *Sutherland*, we affirm the district court's determination, as a matter of law, that Carleton had no reason to anticipate that MMC and appellant would conduct the work in the Laird Stadium attic without proper safety precautions.

Appellant attempts to distinguish this case factually from *Sutherland*. He argues that the previous incident of a ceiling panel falling from the Laird Stadium attic should have placed Carleton on notice that the area was unsafe, that Carleton should have known that workers uniformly did not use fall protection, and that the contract between Carleton and MMC did not relieve Carleton of the duty of care to appellant. We reject these arguments. The safety precautions taken by Carleton employees were not germane to whether Carleton owed a duty of care to others who were not its employees, and by contract, MMC agreed to ensure all safety of its workers.

## II.     Primary Assumption of Risk.

Because we affirm the grant of summary judgment on appellant's negligence claim on the basis that Carleton owed no duty of care to appellant, we need not address whether the district court erred in denying summary judgment on Carleton's argument that appellant primarily assumed risk for the accident. *See Grady v. Green Acres, Inc.*, 826 N.W.2d 547, 550 (Minn. 2013) (stating that "[t]he first step in determining whether primary assumption of the risk applies is to determine whether the defendant owed a duty to the plaintiff" (quotation omitted)); *see also Louis*, 636 N.W.2d at 322 (addressing the

10

circumstances under which the district court must consider primary assumption of risk with regard to negligence claim based on dangerous conditions on property.

### III.    Exclusion of appellant's affidavit.

Appellant argues the district court abused its discretion by rejecting his 40-page affidavit that was included in his submissions filed in opposition to Carleton's motion for summary judgment. Carleton filed the motion for summary judgment on November 20, 2014; Carleton filed a memorandum in support of the motion with a supporting affidavit and exhibits on November 24, 2014; and appellant filed a memorandum in opposition to the motion on December 15, 2014, which included three supporting affidavits. Appellant's memorandum and three supporting affidavits were 543 pages long. One of the supporting affidavits was appellant's 40-page affidavit. Despite the fact that appellant's response to Carleton's summary-judgment motion was late and, according to the district court, "absurdly and unnecessarily long," the district court allowed appellant to appear at the hearing on the motion.

The district court refused to consider appellant's 40-page affidavit because "[t]here are instances where [the] [a]ffidavit contradicts [appellant's] deposition," and because of the "contradictions with [his] earlier testimony." As an example, the district court pointed out that in his December 15, 2014 affidavit, appellant stated that he "believed that [the ceiling] panels would hold my weight," but at his August 27, 2014 deposition, appellant stated that he "wouldn't have walked on [the ceiling panel] unless I assessed it and at that time, no, I would not have walked on the ceiling panel," and that he

11

would not have walked on the ceiling panel because he "wasn't sure" whether it would hold human weight.

"A self-serving affidavit that contradicts earlier damaging deposition testimony is not sufficient to create a genuine issue of material fact." *Banbury v. Omnitrition Int.'l Inc.*, 533 N.W.2d 876, 881 (Minn. App. 1995). *Banbury* relies on the reasoning of *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983), in which the Eighth Circuit Court of Appeals wrote:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

Although appellant protests that exclusion of the entirety of his December 15, 2014, affidavit was a "draconian remedy," at that point in the proceedings the district court record included over 2,000 pages of documents. Further, we will not disturb the district court's discretionary decision to exclude appellant's affidavit because appellant never showed any prejudice by demonstrating how the excluded evidence would have made a difference to his claims.

**IV.     Other pending motions.**

Appellant had two motions pending before the district court when it granted summary judgment to Carleton. Appellant had moved to amend his complaint and to compel discovery.

A pleading may be amended "by leave of court," Minn. R. Civ. P. 15.01, and leave to amend "should be freely granted, except where to do so would result in prejudice to

12

the other party." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993).  On appeal, this court applies the abuse-of-discretion standard of review to a district court's decision on a motion to amend.  *Hunter v. Anchor Bank, N.A.*, 842 N.W.2d 10, 18 (Minn. App. 2013), *review denied* (Minn. Mar. 18, 2014).  Given that appellant had filed his initial complaint seven months earlier, the parties had engaged in numerous depositions and discovery that had fleshed out the claims, and appellant moved to amend over two weeks after Carleton had moved for summary judgment, we observe no abuse of discretion in the district court's decision to deny appellant's motion to amend.  *See Envall v. Indep. Sch. Dist. No. 704*, 399 N.W.2d 593, 597 (Minn. App. 1987) (permitting the district court to consider stage of and delay to trial proceedings in deciding whether to grant motion to amend), *review denied* (Minn. Mar. 25, 1987).  At that point in the trial process, it would have prejudiced Carleton to prepare for trial on new allegations, possibly requiring further discovery and depositions, while simultaneously preparing for the summary-judgment motion hearing.  Further, on the merits, appellant's additional claim of punitive damages was dependent on the viability of his negligence claims.

The motion to compel pertained to Carleton's accident report prepared by Carleton's risk manager in anticipation of litigation and after consultation with Carleton's insurer and insurer's counsel.  This document is work product protected by rule 26.02(b). *See* Minn. R. Civ. P. 26.02(d) (providing for discovery of work product only upon showing of substantial need for the work product and inability to obtain "substantial equivalent of the material by other means").  Appellant also sought additional deposition testimony on safety training of Carleton employees who worked in the attic before

13

appellant was injured. According to Carleton, at the time of this request, appellant had "taken 16 depositions of current or former Carleton College employees, which covered over 37 hours of testimony spanning 1627 pages of transcripts," and "produced over 1,500 pages of documents in response to [appellant's] discovery requests." At least seven current and former Carleton employees were deposed on the subject of safety. The district court did not abuse its discretion by denying appellant's later motion to compel additional discovery. *Star Tribune v. Minn. Twins P'ship*, 659 N.W.2d 287, 293 (Minn. App. 2003) ("Absent a clear abuse of discretion, a [district] court's decision regarding discovery will not be disturbed." (quotation omitted)).

**Affirmed**.